# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Christoff, | Case No. 0:17-cv-03512-DWF-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Unum Life Insurance Company of America, | |
| Defendant. | |

Mark Nolan, Nolan Thompson & Leighton, counsel for plaintiff

Terrence Wagener, Messerli & Kramer P.A., counsel for defendant

  This is a case involving claims under the Employee Retirement and Income Security Act ("ERISA"). Michael Christoff seeks to recover disability benefits under an ERISA group insurance policy provided by his employer, Spencer Stuart Incorporated. Unum Life Insurance Company of America ("Unum") is the administrator responsible for determining whether employees covered under the policy are entitled to disability benefits. Mr. Christoff alleges that he became disabled in December of 2001 as a result of fibromyalgia. Unum paid him disability benefits under the policy until 2016, but in August that year, Unum terminated his benefits, finding him no longer disabled. Mr. Christoff alleges that Unum's decision violates the ERISA policy. He seeks reinstatement of his benefits and an equitable surcharge based on Unum's alleged breach of its fiduciary duties.

  The parties disagree about the standard of review that should be applied to Mr. Christoff's ERISA claim. Mr. Christoff filed a motion arguing that the Court

1

should review his eligibility for disability benefits *de novo*.[1] [Pl.'s Mot., ECF No. 12.] Unum argues that an abuse-of-discretion standard is appropriate. Based on the parties' briefs and the oral argument at the hearing, the Court concludes that the abuse-of-discretion standard is appropriate and recommends that Mr. Christoff's motion seeking application of a *de novo* standard of review be denied.

## I.     Insurance Policy Documents

Mr. Christoff's employer, Spencer Stuart, obtained an ERISA-governed group insurance policy (Policy Number 561995 001) from Unum that became effective on September 1, 2001. [Nolan Aff. ¶ 3, Ex. B at 1, ECF No. 19-2; First Connolly Aff. ¶ 2, Ex. A, ECF No. 22-1.] Several provisions of that policy and related documents are relevant to the standard of review.

The policy's "Table of Contents" points to a "Certificate Section," which identifies itself as the employee's "certificate of coverage." [Nolan Aff., Ex. B at 2; Nolan Aff. ¶ 4, Ex. C at 2; First Connolly Aff., Ex. A at 10.] The policy's cover page indicates that the "policy consists of: all policy provisions and any amendments and/or attachments issued; employees' signed applications; and *the certificate of coverage*." [First Connolly Aff., Ex. A at 1 (emphasis added).]

---

[1]     In his memorandum supporting the motion, Mr. Christoff directed the Court's attention to a term in the policy that indicates Illinois as the governing jurisdiction. He argued that Illinois law now prohibits insurers from including certain discretionary terms in their policies and asserted that change in the law requires application of a de novo standard in this case. [Pl.'s Mem. at 11-13, ECF No. 18 (citing 50 Ill. Admin. Code § 2001.3).] At the January 9, 2018 hearing on the motions, Mr. Christoff's counsel explained that his client no longer intends to pursue this argument in light of Unum's representation that the policy was not renewed after July 1, 2005. Therefore, the Court will not address it.

The certificate of coverage includes two terms that are particularly relevant to the parties' dispute concerning the appropriate standard of review in this case. First, the certificate states:

> If the terms and provisions of the certificate of coverage (issued to you) are different from the policy (issued to the policyholder[2]), the policy will govern.

[First Connolly Aff., Ex. A at 10.] Second, the certificate provides:

> When making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy.

[*Id.*] A "Summary Plan Description" provides that "[t]he Policy may be changed in whole or in part," Spencer Stuart "can request a Policy change," and that "[t]he change must be in writing and endorsed on or attached to the Policy." [First Connolly Aff., Ex. A at 29.][3]

On September 26, 2002, Unum sent Spencer Stuart a document entitled "Amendment No. 1," along with an attachment that purported to replace the entire policy at issue, with the changes being effective as of September 1, 2001. [Second Connolly Aff., Ex. A ("Administrative Record") at 383, ECF Nos. 29-36; *see also* Nolan Aff. ¶ 7, Ex. F.] Amendment No. 1 provides:

> If this amendment is unacceptable, please sign below and return this amendment to Unum Life Insurance Company of America at Portland, Maine within 90 days of September 26, 2002.

---

[2]   Spencer Stuart is identified as the policyholder. [First Connolly Aff., Ex. A at 34.]

[3]   A complete copy of the original September 1, 2001 long-term disability policy appears in the record in Exhibit A (pages 120-55) to the Second Affidavit of Karen Connolly. [ECF No. 30 at 120-55.]

> **YOUR FAILURE TO SIGN AND RETURN THIS AMENDMENT BY THAT DATE WILL CONSTITUTE ACCEPTANCE OF THIS AMENDMENT.**

[Administrative Record at 383 (emphasis in original).] Beneath this language is an unexecuted signature block for an officer of Spencer Stuart. [Administrative Record at 383.]

The attachment to Amendment No. 1 representing the replacement policy also includes a "Certificate Section" containing the same language excerpted above regarding conflicts between the certificate of coverage and the policy and Unum's discretionary authority to determine eligibility for benefits and interpret the policy. [Administrative Record at 393.] The replacement policy also includes a "Discretionary Acts" provision in its "Additional Summary Plan Description Information" section, which states:

> In exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as a claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan. Benefits under this Plan will be paid only if the Plan Administrator or its designee (including Unum), decides in its discretion that the applicant is entitled to them.

[Administrative Record at 416; Nolan Aff., Ex. E at 31.] This Discretionary Acts provision does not appear in the original September 1, 2001 policy. [*See* Administrative Record at 120-55; First Connolly Aff., Ex. A at 1-36.]

## II. Discussion

As noted, the parties dispute the standard of review that is appropriate in light of the governing documents discussed above.[4] It is well settled that "a denial of

---

[4] Although Mr. Christoff's briefing suggests that the Court must apply Seventh Circuit law in this case, he offered no support for that assertion. [Pl.'s Mem. at 6 ("As
(*footnote continued on next page*)

benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *Jalowiec v. Aetna Life Ins. Co.*, 155 F. Supp. 3d 915, 934 (D. Minn. 2015) (quoting *Firestone*). "When a plan gives discretionary authority to the administrator or fiduciary to determine eligibility for benefits or to construe the terms of the plan, the Court reviews the decision to deny benefits for an abuse of discretion." *Jalowiec*, 155 F. Supp. 3d at 934. "[E]xplicit discretion-granting language" is required to trigger the deferential standard of review. *Hankins v. Standard Ins. Co.*, 677 F.3d 830, 835 (8th Cir. 2012).

The legal framework for determining whether discretionary authority exists in an ERISA case like this is clearly laid out in the District Court's decision in *Jalowiec*:

> To determine whether "the benefit plan gives the administrator or fiduciary discretionary authority," *Firestone*, 489 U.S. at 115, 109 S. Ct. 948, courts must look for "'explicit discretion-granting language' in the policy or in other plan documents. . . ." *McKeehan v. Cigna Life Ins. Co.*, 344 F.3d 789, 793 (8th Cir. 2003) (quoting *Walke v. Grp. Long Term Disability Ins.*, 256 F.3d 835, 839 (8th Cir. 2001)). Determining what constitutes the governing plan in ERISA cases "is not always a clear-cut task." *Admin. Comm. of Wal–Mart Stores, Inc. v. Gamboa*, 479 F.3d 538, 542 (8th Cir. 2007). In particular, "often the terms of an ERISA plan must be inferred from a series of documents none clearly labeled as 'the plan.'" *Id.* (quoting *Health Cost Controls of Ill. v. Washington*, 187 F.3d 703, 712 (7th Cir. 1999)). If two plan documents are in conflict, discretion-granting language in one document may be rendered ineffective by the lack of such language in another. *See Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 987-88 (8th Cir. 2014) (discussing *Jobe*, 598 F.3d 478; *Ringwald* [*v. Prudential Ins. Co. of Am.*], 609 F.3d 946 [(8th Cir. 2010)]. However, if the two documents are integrated, there is no conflict, and the

---

(*footnote continued from previous page*)
noted above, the policy provides that the governing jurisdiction is Illinois, so decision from court[s] in the Seventh Circuit apply.").]

5

> discretion-granting language in one plan document may control. *Id.* at 988.
>
> "[I]n interpreting the terms of the plan, like all contracts, '[c]ourts must look at the ERISA plan as a whole.' " *Shaw v. Prudential Ins. Co. of Am.*, 566 Fed. Appx. 536, 539 (8th Cir. 2014) (quoting *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 820 (4th Cir. 2013)) (finding discretion-granting language sufficient to trigger deferential abuse-of-discretion review in a global "wrap-plan document"). Recently, the Eighth Circuit emphasized that "courts should give the language of the policy and the summary plan description a common and ordinary meaning and construe the documents as a reasonable person in the position of the plan participant, not the actual participant, would have understood the words." *Johnson*, 775 F.3d at 987-88 (internal quotation marks and citation omitted).

*Jalowiec*, 155 F. Supp. 3d at 935-36 (brackets indicating alterations in original removed).

At the hearing on Mr. Christoff's motion, his counsel commendably summarized his client's position.[5] First, Mr. Christoff asserts that *de novo* is the default standard of review in an ERISA case such as this. Second, he argues that the original September 1, 2001 policy includes no language that explicitly grants Unum discretionary authority over benefits decisions for covered employees. Third, because the policy itself is silent on discretion, and the only discretionary language appears in the Certificate Section, a conflict exists between the policy and certificate. Next, because language in the certificate of coverage provides that the policy governs where such a conflict exists, Mr. Christoff maintains that the discretion-granting language in

---

[5] Mr. Christoff's argument is also similarly presented in a bulleted list at page 9 of his supporting memorandum. [Pl.'s Mem. at 9, ECF No. 18.] At one point in that list, Mr. Christoff asserts that "Unum hasn't produced an ERISA Plan." [*Id.*] This suggested the possibility that the parties presented the motion concerning the standard of review to the Court for resolution based on an incomplete record. However, in a joint letter dated January 26, 2018, the parties indicated that they "agree the record is complete and the Court should consider the motion based on the information and arguments before it." [Joint Letter to Menendez, M.J. (Jan. 26, 2018) at 1, ECF No. 45.]

the certificate must be disregarded. And finally, he argues that Unum cannot rely upon the revised policy reflected in "Amendment No. 1" or the materials attached to it because those documents did not effectively amend the policy. Unfortunately for Mr. Christoff, the Court finds his argument unpersuasive.

### A. The Original September 1, 2001 Policy

The Certificate Section in the original September 1, 2001 policy identifies itself as the employee's certificate of coverage. In that certificate of coverage appears the following explicit discretion-granting language: "Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." Critically, the cover page of the original September 2, 2001 policy plainly provides that the certificate of coverage is a part of the policy itself. This key language states: "This policy consists of: all policy provisions and any amendments and/or attachments issued; employees' signed applications; and *the certificate of coverage*." [First Connolly Aff., Ex. A at 1 (emphasis added).]

This language incorporating the certificate of coverage into the policy itself is fatal to Mr. Christoff's position. Applying the governing legal framework summarized in *Jalowiec*, because the certificate of coverage and the policy are "integrated, there is no conflict [between them], and the discretion-granting language in one plan document may control." *See Jalowiec*, 155 F. Supp. 3d at 935 (citing *Johnson*, 775 F.3d at 988). In arguing to the contrary, Mr. Christoff ignores the language incorporating the certificate of coverage into the policy. He does not cite any comparable case where a court has disregarded discretion-granting language found in a document which is expressly incorporated into an ERISA policy. The discretion-granting language in the certificate of coverage here is part of the policy and it is clear and unambiguous. As a result, the Court concludes that the original September 1, 2001 policy gives Unum the discretionary authority to determine eligibility for benefits under the policy and to interpret the terms of the plan. Consequently, the language in the original policy is sufficient to trigger the deferential standard of review—abuse of discretion. *See Wakkinen v. UNUM Life Ins. Co. of Am.*, 531 F.3d 575, 580-81 (8th Cir. 2008)

(concluding that a Unum plan, which expressly incorporated the certificate of coverage that itself contained explicit discretion-granting language, was sufficient to trigger the abuse-of-discretion standard).

The structure and language of other provisions in the original September 1, 2011 policy reinforce the Court's conclusion. For example, although Mr. Christoff treats the policy as a plan document that is distinct from both the "certificate of coverage" and "Summary Plan Description," both the pagination of the policy and the inclusion of these items in the policy's Table of Contents suggest that all of these sections are integrated with one another. A reasonable plan participant reading these documents as a whole would understand that the certificate of coverage, the policy, and the summary plan description in the original September 1, 2001 policy are all part of a cohesive unit. *See Shaw* 566 Fed. Appx. at 539 (providing that courts "must look at the ERISA plan as a whole"); *Johnson*, 775 F.3d at 987-88 (indicating that courts should read the plan documents from the perspective of a reasonable plan participant).

Nor is the Court persuaded that the case on which Mr. Christoff primarily relies—*Jobe v. Medical Life Ins. Co.*, 598 F.3d 478 (8th Cir. 2010)—requires a different outcome. In *Jobe*, the Eighth Circuit Court of Appeals reversed a district court's decision granting summary judgment to an ERISA plan administrator and remanded for application of a *de novo* standard of review. *Id.* at 486. In *Jobe*, the ERISA plan included a policy and several other documents, but the policy itself contained an integration clause that did not list the certificate of coverage as one of the documents that comprised the policy. *Id.* at 479-80 (describing the integration clause). The plan administrator also provided the employer with a certificate of coverage document and an ERISA information sheet, which together comprised the summary plan description. *Id.* at 480. The summary plan description included discretionary-granting language that did not appear in the policy and the policy itself provided that the policy governed where there was a conflict. *Id.* Unlike the original September 1, 2001 policy at issue here, the discretion-granting language in *Jobe* did not appear in a document

that was explicitly incorporated into the policy document. *Jobe* is therefore distinguishable and does not help Mr. Christoff.[6]

### B.   Amendment No. 1

Mr. Christoff's discussion of the revised policy reflected in Amendment No. 1 and its attached documents appears to concede that the "Discretionary Acts" provision would effectively confer discretion on Unum to determine eligibility and interpret the terms of the plan. However, Mr. Christoff argues that, for a variety of reasons, the amendment did not validly confer discretion on Unum. Because the Court has concluded that the original September 1, 2001 policy effectively confers such discretion on Unum, the Court need not decide whether Amendment No. 1 effectively revised the policy. Nor does the Court need to consider what effect, if any, the affidavit of Janeen Frank [ECF No. 25], has on the validity of the purported revision of the policy.

### Recommendation

Based on the foregoing, **IT IS HEREBY RECOMMENDED THAT** Plaintiff's Motion in Support of De Novo Standard of Review **[ECF No. 12]** be **DENIED** and the District Court should apply the abuse-of-discretion standard in this case.

Date: February 12, 2018                    *s/Katherine Menendez*
                                            Katherine Menendez
                                            United States Magistrate Judge

---

[6] Much of the Eighth Circuit's discussion in *Jobe* rejects the plan administrator's arguments that a conflict between an ERISA policy and a separate summary plan description should always be resolved in favor of the language in the summary plan description. *See* 598 F.3d at 481-85 (discussing and distinguishing cases the administrator argued allowed the summary plan description to prevail in the event of a conflict). However, Unum makes no such argument in this case. Unum relies instead on the incorporating language on the cover page of the original September 1, 2001 policy to distinguish *Jobe*. Here, it is that very distinction which makes the difference.

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.