# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael Christoff, | Case No. 0:17-cv-03512-DWF-KMM |
| Plaintiff, | |
| v. | **ORDER** |
| Unum Life Insurance Company of America, | |
| Defendant. | |

Mark Nolan, Nolan Thompson & Leighton, counsel for plaintiff

Terrence Wagener, Messerli & Kramer P.A., counsel for defendant

On February 14, 2018, following an *in camera* review, the Court found that six documents Unum withheld or redacted contained information protected by the attorney-client privilege. [Order, ECF No. 53.] As indicated, the parties then filed letter briefs to address the issue whether Unum is nevertheless required to provide Mr. Christoff the undisclosed information pursuant to the so-called "fiduciary exception" to the privilege. [Pl.'s Letter, ECF No. 54; Def.'s Letter, ECF No. 55.] Having reviewed these letters and the relevant caselaw, and for the reasons discussed below, the Court concludes that the fiduciary exception is applicable to Unum and the documents at issue fall within that exception.

**I.    Background**

For several years, Michael Christoff was an employee of Spencer Stuart, Inc. Spencer Stuart offered its employees, an employee benefit plan. The plan, which is governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq., provided disability benefits to the plan participants including Mr. Christoff. Unum Life Insurance Company of America insured the plan under a group insurance policy. Mr. Christoff participated in the plan and alleges that he

became disabled due to severe fibromyalgia in November 2001. Unum paid long term disability benefits to Mr. Christoff for more than fifteen years, but terminated those benefits on November 22, 2016. Mr. Christoff appealed the termination of benefits and Unum upheld its decision on June 15, 2017.

Between November 22, 2016, when Unum first terminated Mr. Christoff's long-term-disability benefits, and June 15, 2017, when Unum made its final decision resolving Mr. Christoff's appeal, Mr. Christoff's counsel sent Unum several requests for disclosure of information. On the heels of those requests, Unum claims analyst, Stephanie Tuck, sent several communications to Dan Flynn and Oliver Murray, who are in-house counsel for Unum. Ms. Tuck asked Messrs. Flynn and Murray for legal advice about Mr. Christoff's counsel's request.

During this litigation, Unum produced an Amended Privilege/Redaction Log that identified each of the communications between Ms. Tuck and Unum's in-house counsel. The Log also identified a partial redaction of a March 22, 2017 document that reflects Murray's advice with respect to a request from Mr. Christoff's counsel. Unum asserts that each of these items is protected by the attorney-client privilege, and as noted above, the Court has concluded after an *in camera* review that they contain confidential communications between an attorney and client for the purpose of procuring legal advice.

Mr. Christoff now argues that the "fiduciary exception" to the attorney-client privilege applies to each of the communications that Unum is withholding. Because these communications occurred before he submitted his appeal and before Unum made its final decision on that appeal, Mr. Christoff asserts that they are matters of plan administration and the fiduciary exception defeats Unum's claim of privilege.

Unum contends that the Eighth Circuit Court of Appeals has not adopted the "fiduciary exception" and would be unlikely to apply it to an ERISA insurer like Unum. Unum argues that the Eighth Circuit would "likely follow the well-reasoned decision of *Wachtel v. HealthNet, Inc.*, 482 F.3d 225 (3rd Cir. 2007), exempting insurers like Unum from the fiduciary exception." [Def.'s Letter at 1.] Alternatively, Unum argues that even if the fiduciary exception were adopted, it would not apply in this case because Unum relationship to Mr. Christoff was already adverse at the time the Ms. Tuck requested legal advice from Unum's in-house counsel.

## II.   The "Fiduciary Exception"

Federal common law governs questions of privilege in cases like this where the Court's jurisdiction is based on a federal question. Fed. R. Evid. 501; *Hollins v. Powell*, 773 F.2d 191, 196 (8th Cir. 1985). The party claiming the benefit of the attorney-client privilege has the burden of establishing that it applies. *Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 609 (8th Cir. 1978). Generally speaking, the attorney-client privilege protects from disclosure confidential communications between a client and his or her attorney made for the purpose of obtaining legal advice or legal services. *United States v. Yielding*, 657 F.3d 688, 707 (8th Cir. 2011). However, the protection from disclosure of such communications is not absolute.

Several courts have recognized an exception to the attorney-client privilege where a fiduciary relationship is concerned, such as when a beneficiary of a trust is attempting to obtain otherwise privileged documents from the trustee. *See United States v. Jicarilla Apache Nation*, 564 U.S. 162, 167 (2011) ("Under [the fiduciary] exception, which courts have applied in the context of common-law trusts, a trustee who obtains legal advice related to the execution of fiduciary obligations is precluded from asserting the attorney-client privilege against the beneficiaries of the trust."). Generally, the fiduciary exception exists because a trustee has a common law duty to disclose information to the beneficiaries of the trust when the trustee receives legal advice "relating to his administration of the trust." *Wachtel*, 482 F.3d at 231. The exception has also been explained by the rationale that a trustee is not the "real client" receiving the advice because the trustee acts as a representative of the beneficiaries' interests. *United States v. Mett*, 172 F.3d 1058, 1063 (9th Cir. 1999).

A number of circuit courts have applied the fiduciary exception to ERISA fiduciaries. *Bland v. Fiatallis N. Am., Inc.*, 401 F.3d 779, 787-88 (7th Cir. 2005); *Mett*, 172 F.3d at 1062; *Becher v. Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997); *Wilbur v. ARCO Chemical Co.*, 974 F.2d 631, 645 (5th Cir. 1992). "[I]n the ERISA context, the fiduciary exception provides than an employer acting in the capacity of ERISA fiduciary is disabled from asserting the attorney-client privilege against plan beneficiaries on matter of plan administration." *Mett*, 178 F.3d at 1063; *Krueger v. Ameriprise Fin., Inc., LLC*, No. 11-cv-2781 (SRN/JSM), 2014 WL 12597432, at *11 (D. Minn. May 7, 2014) (same). However, even when the exception is recognized, it does not defeat the attorney-client privilege where the fiduciary communicates with its attorneys "on non-fiduciary matters." *Smith v. Jefferson Pilot Fin. Ins. Co.*, 245 F.R.D. 45,

3

48 (D. Mass. 2007). For example, an ERISA fiduciary that obtains legal advice to defend itself against plan beneficiary claims can maintain the confidentiality of otherwise privileged communications.[1] *See id.* (citing *Mett*, 178 F.3d at 1064).

Drawing the line between matters of plan administration (which are not protected from disclosure) and communications involving legal advice on non-fiduciary matters (which remain protected) requires "a fact-specific inquiry, examining both the content and context of the specific communication." *Smith*, 245 F.R.D. at 48 (internal quotations omitted). A "key question" is often "whether the communication was made before or after the final decision to deny benefits." *Id.* (internal quotations omitted). This demarcation makes sense as courts attempt to discern whether the interests of the fiduciary withholding the information and those of beneficiary seeking its production have diverged and a threat of litigation has arisen such that the fiduciary is justified in obtaining confidential advice from counsel for its own protection. *See Cottillion v. United Refining Co.*, 279 F.R.D. 290, 301 (W.D. Pa. 2011); *Allen v. Honeywell Retirement Earnings Plan*, 698 F. Supp. 2d 1197, 1201 (D. Ariz. 2010) ("The interests of plan participants and plan administrators undoubtedly diverge sufficiently upon the final denial of an administrative claim or upon the initiation of litigation.").

However, a sufficiently adversarial relationship may arise before the final decision denying benefits. *See Olsen v. Standard Ins. Co.*, No. 13-cv-576 (SRN/TNL), Doc. No. 33 at 6 (D. Minn. Oct. 17, 2013) (Order denying motion to compel). In *Olsen*, for example, United States Magistrate Judge Tony N. Leung found that the fiduciary exception did not require disclosure of a plan administrator's communications with its attorneys that occurred after the plaintiff's counsel sent a letter in response to the administrator's initial unfavorable benefits determination. *Id.* at 7. In light of the particular language used in the plaintiff's counsel's letter, Judge Leung found it reasonable to conclude that there was a sufficient threat of future litigation that an adversarial relationship had developed. *Id.*

---

[1] This scenario has sometimes been referred to as the "liability exception" to the fiduciary exception. *See Wachtel*, 482 F.3d at 233 (discussing situations in which courts have held the fiduciary exception does not apply). This Court will attempt to avoid a confusing and inartful discussion of exceptions to exceptions.

The Eighth Circuit has not officially held that the fiduciary exception to the attorney-client privilege applies in ERISA cases or to insurers who act as ERISA fiduciaries. However, in *Carr v. Anheuser-Busch Cos., Inc.*, 495 Fed. App'x 757, 767-68 (8th Cir. 2012), the court upheld a district court's ruling that an ERISA plan administrator could not be compelled to produce emails between the plan administrator and its in-house counsel.[2] The Eighth Circuit held that the district court did not abuse its discretion where it determined that the fiduciary exception only applied to one of the communications the plaintiff tried to compel. *Id.* at 768 (citing *Mett*, 178 F.3d at 1064). The other three emails remained protected by the attorney-client privilege because the plaintiff's "interest had become sufficiently adverse to that of the plan administrator's interest because the final decision to deny benefits had effectively been made." *Id.*

To summarize, a fiduciary exception to the attorney-client privilege is widely accepted in federal courts. The exception has also been fairly consistently applied in the ERISA context. Courts applying the exception in ERISA cases attempt to differentiate between situations in which an ERISA fiduciary obtains legal advice about matters of plan administration, which must be disclosed, and those where the fiduciary seeks advice for non-fiduciary matters, which remain privileged. The focus in that inquiry is often the point at which an adversarial relationship between fiduciary and beneficiary materialized such that the fiduciary is justified in seeking legal advice for its own benefit. Finally, although the exception has not been expressly adopted by the Eighth Circuit generally or in ERISA cases, its application by a district court in the ERISA context has gone undisturbed. With these concepts in mind the Court addresses the parties' arguments in this case.

## III. Discussion

The parties first disagree whether the fiduciary exception applies to Unum, which is not Mr. Christoff's employer, but insured and administered employer Spencer Stuart's employee benefit plan. If the fiduciary exception does not apply to an

---

[2] In *Krueger*, United States Magistrate Judge Janie S. Mayeron noted that "the Eighth Circuit has yet to expressly adopt the application of the fiduciary exception to the attorney-client privilege, however the parties and the Court are in agreement that the exception exists," and cited the *Carr* decision's reliance on *Mett*, 178 F.3d at 1064, and *Smith*, 245 F.R.D. at 48. *Krueger*, 2014 WL 12597432, at *11 n.7.

ERISA insurer like Unum, then the attorney-client privilege will protect the communications at issue and the inquiry ends. On the other hand, if the Court concludes that the fiduciary exception applies, then it must address the parties' disagreement about the nature of the communications at issue. That examination asks whether the communications between Unum's claims personnel and its in-house counsel involve matters of plan administration (in which case the fiduciary exception would defeat the attorney-client privilege) or non-fiduciary matters (in which case Unum would retain its attorney-client privilege).

### A. The Fiduciary Exception for ERISA Insurers

As noted above, to support its argument that the fiduciary exception does not apply to an ERISA insurer, Unum relies heavily on the Third Circuit's decision in *Wachtel v. Health Net, Inc.*, 482 F.3d 225 (3rd Cir. 2007). Unum argues that we should follow *Wachtel* because it is well-reasoned and other Eighth Circuit cases generally recognize that the attorney-client privilege's protection from disclosure of corporate in-house counsel's advice ensures compliance with the law. [Def.'s Letter at 1 (citing *Shelton v. Am. Motors Corp.*, 805 F.3d 1323, 1326 (8th Cir. 1986).]

#### 1. The *Wachtel* decision

In *Wachtel*, the Third Circuit declined to decide whether to adopt the fiduciary exception generally and concluded that even if it should be adopted, the exception would not apply to the insurance-company defendants that sold ERISA benefit plans to the plaintiffs' employers. *Id.* at 226-27. After examining the historical underpinnings of the fiduciary exception in the context of trust law and its application in shareholder derivative suits, the court observed that its extension to ERISA cases was based on "both the beneficiaries' right to inspection and their identity as the 'real' clients" for whom the advice was procured. *Id.* at 230-33. However, the court reasoned that "ERISA fiduciaries . . . come in many shapes and sizes, and we do not believe that the logic underlying the fiduciary exception applies equally to all." *Id.* at 234. The court concluded "that the fiduciary exception does not apply to an insurer

[providing ERISA benefits] because the plaintiff-beneficiaries are not the 'real' clients obtaining legal representation."[3] *Id.*

*Wachtel* decided that the ERISA plan beneficiaries are not the real clients for four reasons. First, the fiduciary exception is traditionally applied where the trustee/fiduciary is managing assets over which it has no ownership rights and no personal interest. *Wachtel*, 482 F.3d at 234. Because an insurer acting as an ERISA fiduciary retains legal title to the assets used for the ERISA plan, the insurer retains a "substantial and legitimate interest in the management of its assets—even while it engages in fiduciary acts." *Id.* Second, the insurer's inherent profit motive creates a structural conflict of interest between the beneficiaries and an insurer that determines eligibility for benefits and pays those benefits from its own funds. *Id.* at 234-35. That conflict "undermines the argument that when an insurer retains counsel, the real clients being served are the beneficiaries." *Id.* at 235. Third, insurers acting as ERISA fiduciaries typically "face the additional conflict of handling multiple ERISA benefit plans" as well as "other, non-ERISA regulated customers," which means that even as insurers act as fiduciaries for one group of ERISA beneficiaries, they must keep in mind the other duties owed to such additional customers. *Id.* And fourth, the court reasoned that an ERISA insurer pays for legal advice using its own assets rather than from trust funds, further differentiating it from the typical situation found in trust law that gave rise to the fiduciary exception. *Id.* at 235-36.

The *Wachtel* court also reasoned that the other historical basis for adopting the fiduciary exception in ERISA cases—the fiduciary's duty of disclosure to the beneficiary—was distinguishable for insurance companies. 482 F.3d at 236-37. Because "Congress provided that the assets of an insurance company need not be held in trust, . . . the disclosure obligations of an insurer-fiduciary cannot be defined through rote application of the common law of trusts." *Id.* The court also reasoned that requiring an insurance company to disclose the advice of its own retained counsel was inappropriate because the fiduciary obligations of ERISA insurers "are not well-settled at law." *Id.* at 237. The court was persuaded that an insurance company's need to obtain confidential legal advice should be preserved in the face of such uncertainty.

---

[3] Because the *Wachtel* court reached this conclusion, it did not address the issue whether the communications at issue related to matters of plan administration or for non-fiduciary matters.

*Id.* Finally, the court determined that uncertainty in the attorney-client privilege could have unwanted outcomes for ERISA beneficiaries, including the possibility that insurers who are unsure whether they may receive confidential legal advice could decide to stop insuring ERISA benefit plans or charge more for their serves. *Id.*

### 2.     Post-*Wachtel* jurisprudence

Since it was decided more than a decade ago, *Wachtel* has not been widely adopted and its reasoning has been heavily criticized. *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 931 n.6 (9th Cir. 2012) ("Every district court that has considered the question since, however, has rejected *Wachtel's* approach and held that the fiduciary exemption does apply to insurance companies.") (citing *Klein v. Nw Mutual Life Ins. Co.*, 806 F. Supp. 2d 1120 (S.D. Cal. 2011); *Buzzanga v. CIGNA*, No. 4:09-cv-1353, 2010 WL 1292162 (E.D. Mo. Apr. 5, 2010); and *Smith*, 245 F.R.D. 45). These more recent decisions represent the better rule of law.

The courts that have addressed the issue raised by Unum in this case have concluded that the two rationales underlying the traditional application of the fiduciary exception—*i.e.*, the beneficiaries are the real client and the fiduciary's duty of disclosure—apply with equal force to an insurance company acting as an ERISA fiduciary. *See, e.g.*, *Stephan*, 697 F.3d at 931 ("The duty of an ERISA fiduciary to disclose all information regarding plan administration applies equally to insurance companies as to trustees."); *id.* at 932 (considering the ERISA plan beneficiary to remain the "real client" because "the obligation that an ERISA fiduciary act in the interest of the plan beneficiary does not differ depending on whether that fiduciary is a trustee or an insurer").

As noted above, *Wachtel* described several reasons for its conclusion that when an insurance company obtains legal advice in its role as an ERISA fiduciary, the "real client" is the insurance company itself, not the ERISA plan beneficiaries. But since *Wachtel*, courts have not adopted this reasoning. *Buzzanga*, 2010 WL 1292162, at *3 ("The *Wachtel* court determined that insurance beneficiaries were no an insurer's true clients. . . . This reasoning has not been adopted by other courts."). Essentially, courts addressing the issue have found the four factors identified the *Wachtel* court unconvincing because the fiduciary obligations owed to ERISA-plan beneficiaries do not change depending on the identity of the plan administrator. For example, *Wachtel* considered it significant that an insurance company retains legal title to the assets, but

8

more recent decisions note that this does not significantly alter the fiduciary's obligation to properly manage those assets so they are available to plan beneficiaries. *Smith*, 245 F.R.D. at 52 ("[A]ll fiduciaries have an obligation to properly and appropriately manage the assets which are to be available for the plan beneficiaries."); *Klein*, 806 F. Supp. 2d at 1131 (same). Similarly, courts reviewing *Wachtel* have noted that non-insurers acting as ERISA fiduciaries face similar obligations to multiple claimants so that insurers' management of potentially conflicting responsibilities creates no meaningful distinction. *Smith*, 245 F.R.D. at 52; *Klein*, 806 F. Supp. 2d at 1131.

This Court is not persuaded that an insurance company has a divergent interest from an ERISA plan's beneficiaries simply because the insurer has a profit motive. *See Wachtel*, 482 F.3d at 234-35. Such a profit motive does not preclude insurers from acting as ERISA fiduciaries. In discharging other obligations to ERISA plan beneficiaries, the law considers insurance companies to be capable of setting aside such a profit motive and making decisions in the best interests of its beneficiaries. The Court sees no reason why that profit motive would create a greater divergence of interests whenever the insurer seeks legal advice, including on matters of plan administration.

With respect to the fiduciary's duty of disclosure, although *Wachtel* reasoned that insurers should be distinguished because they need not hold plan assets in trust, other courts having pointed out that *Wachtel* did not rely on statutory language or implementing regulations creating different disclosure obligations among fiduciaries. *Smith*, 245 F.R.D. at 51 ("Notably, the *Wachtel* court pointed to nothing in the statute or in its implementing regulations relating to disclosure that would exempt insurance companies from any of ERISA's disclosure requirements or otherwise distinguishes between types of fiduciaries for purposes of disclosure."); *Klein*, 806 F. Supp. 2d at 1130 ("[T]here is no reason to assume that Congress intended to exempt insurance companies from the disclosure obligations of ERISA simply because it exempted them from the requirement to hold plan assets in trust."); *Moss v. Unum Life Ins. Co.*, No. 5:09-cv-209, 2011 WL 321738, at *4 (W.D. Ky. Jan. 28, 2011) ("[T]he Court agrees with the finding in *Smith* that there is no statutory basis for applying the fiduciary exception to all fiduciaries except insurers, i.e., the duty to disclose is the same."). Allowing an insurer to claim attorney-client privilege over such plan-administration matters would frustrate the purpose of the disclosure requirement—

9

*i.e.*, ensuring a claimant's full and fair review of the evidence the administrator relied on in making a decision to deny benefits. *Smith*, 245 F.R.D. at 51; *Klein*, 806 F. Supp. 2d at 1130 ("As a policy matter, it would be inconsistent with Congressional intent to protect ERISA beneficiaries and to mandate disclosure of information concerning plan administration, while at the same time to allow an ERISA plan to hide attorney-client communications relating to the decision of whether a beneficiary is entitled to benefits by contracting that duty out to an insurance company.").

Finally, *Wachtel*'s consideration of the uncertainty created by application of the fiduciary exception to insurers and the possibility that its application might lead insurers to change their ERISA-related practices has also been criticized, and the warned-of uncertainty has not emerged. As one court put it:

> Finally, the two miscellaneous factors which tipped the s[c]ales in the *Wachtel* court's opinion have been rejected by the multitude of courts addressing the fiduciary exception. This court also does not find the arguments persuasive. Knowing that the fiduciary exception will apply to an insurer's communications with counsel will give the insurer as much certainty as a holding to the contrary. In addition, there is nothing in the record before this court to indicate that the insurance company will run away from the business of providing coverage under ERISA plans because it must disclose information concerning how it reached benefit decisions.

*Smith*, 245 F.R.D. at 52-53.

### 3. Conclusion

The Court finds that the fiduciary exception to the attorney-client privilege applies in cases such as this wehre an insurer acts as a fiduciary of an ERISA plan. The more recent cases rejecting *Wachtel* are the more persuasively reasoned precedent. Like the Ninth Circuit in *Stephan* and the District of Massachusetts in *Smith*, the Court concludes that there is no principled basis for applying the fiduciary exception differently in the context of an insurance company than for other ERISA fiduciaries. Unum has failed to point to any Eighth Circuit case that conflicts with the fiduciary exception generally, its application to ERISA cases, or its application in ERISA cases where the fiduciary is an insurance company. Indeed, the closest Eighth Circuit

decision on point is *Carr*, which indicated no disapproval of the doctrine and cited *Smith* with approval.[4] For these reasons, the Court concludes that the fiduciary exception applies in this case.

### B.     Application of Fiduciary Exception

Having determined that the fiduciary exception should be considered regardless of the fact that Unum is an insurance company, the Court must now determine whether the attorney-client privilege protects the communications at issue or they fall within the exception to the privilege. Unum acknowledges that the communications between Ms. Tuck and in-house counsel took place before the final benefits determination, but argues that the attorney-client privilege nevertheless protects them from disclosure because the relationship was sufficiently adversarial that the exception would not apply. Unum relies on three facts to support its claim of a divergence of interests between itself and Mr. Christoff at the time of the communications: (1) the communications post-date Unum's initial termination of benefits; (2) the communications responded to Mr. Christoff's attorney, who had referenced that termination decision; and (3) "each of these communications memorializes some disagreement between Unum's claims analysts and Plaintiff's counsel as to Unum's production of information to Plaintiff." [Def.'s Letter at 3-4.]

Considering the content and context of the communications the Court has already reviewed *in camera*, the Court concludes that, for several reasons, they fall within the fiduciary exception to the attorney-client privilege. First, the Court notes that the communications did not come after Unum's final decision denying Mr. Christoff's appeal, but shortly after its initial decision to terminate his benefits. It is true that an ERISA fiduciary's communications with counsel do not always fall within the exception to the privilege when they precede the final denial on administrative appeal. However, Unum points to nothing in the record indicating that this was a situation in which "the final decision to deny benefits had effectively been made" or that Mr. Christoff's "only recourse, if he disagreed with the decision, was litigation." *Carr*, 495 Fed. App'x at 768.

---

[4]     Though *Carr* was not directly confronted with the issue Unum presents in this case, the decision cuts against Unum's argument that the Eighth Circuit would disapprove of the application of the fiduciary exception.

11

Second, the Court rejects any suggestion by Unum that an adversary relationship is demonstrated merely by the fact that Mr. Christoff had retained counsel, and after his attorney contacted Unum on July 26, 2016, "all subsequent communications from Unum to Plaintiff were through his counsel." [Def.'s Mem. at 3.] ERISA beneficiaries frequently obtain counsel to communicate with plan administrators following an initial denial of benefits. The fact that a beneficiary does so is certainly relevant to the Court's analysis, but it does not answer the question on its own. Instead, the beneficiary's retention of counsel must be accompanied by some indication that an adversarial relationship has developed. For example, in *Olsen* the court was motivated not by the fact that Mr. Olsen's family had retained counsel after the initial benefits decision, but instead by the aggressive tone of the letter and its explicit invocation of an intent to litigate. *Olsen*, No. 13-cv-576 (SRN/TNL), Doc. No. 33 at 7 (focusing on the specific language used by the estate's attorney and counsel's clear expression of disagreement with the merits of the fiduciary's initial denial of the claim).

Third, Unum indicates that each of the communications at issue "memorializes some disagreement between Unum's claims analysts and Plaintiff's counsel as to Unum's production of information to Plaintiff." [Def.'s Mem. at 4.] But the content of the requests for information submitted by Mr. Christoff's counsel to Unum did not establish a reasonable threat of litigation such that an adversarial relationship had arisen. For example, Mr. Christoff's counsel wrote Ms. Tuck a letter on November 30, 2016, asking for a list of information he asserted had to be produced pursuant to ERISA regulations,[5] but nothing in that letter contains the type of language that makes "the threat of litigation more than a possibility." *Olsen*, No. 13-cv-576 (SRN/TNL), Doc. No. 33 at 7 (excerpting letter from the claimant's counsel challenging the claims administrator's reading of a contract and asserting that "I do not see any way their reading of the contract can stand"). Other communications cited by Unum reiterate disagreements about information Mr. Christoff requested and explain his need for the requested materials in preparation of an administrative

---

[5] *See* UA-CL-LTD-4868-70, ECF No. 34.

appeal.[6] But these subsequent communications from Mr. Christoff's counsel did not significantly ratchet up the adversarial relationship.

Finally, and most importantly, Ms. Tuck's communications with in-house counsel plainly concern matters of plan administration—*i.e.*, the scope of the administrator's obligation to provide information to a plan beneficiary. These are precisely the types of communications that have been found to fall within the fiduciary exception even though they reflect a claims analyst's request to in-house counsel for legal advice:

> In the instant case, Jefferson Pilot does not dispute, and this court's *in camera* review has confirmed, that, with one exception, the documents at issue were generated in connection with Jefferson Pilot's processing of Smith's claim for benefits and before a final benefits determination was made. . . . Although they demonstrate that claims personnel were seeking advice for the purpose of responding to inquiries and assertions from Smith's attorney, the documents concern issues of plan administration and are entirely unrelated to the defense of a pending legal action or other non-fiduciary matter. Therefore, pursuant to the reasoning of the courts discussed above, the fiduciary exception would defeat Jefferson Pilot's claim of privilege.

*Smith*, 245 F.R.D. at 48-49. This same reasoning applies here. The Court's *in camera* review confirms that the communications at issue were generated in connection with Unum's processing of Mr. Christoff's claim for benefits. Prior to the final determination, Mr. Christoff's counsel sought information that he asserted Unum was required to provide. There was no request for advice connected to any pending legal action or a specific threat of litigation. Nothing in the context or content of these communications suggests that Unum was seeking legal help to defend itself against Mr. Christoff. Rather, their context and content suggests that Ms. Tuck sought input from counsel to determine whether Unum had an obligation to provide information

---

[6] *See, e.g.*, UA-CL-LTD-4911, ECF No. 35; UA-CL-LTD-4931; UA-CL-LTD-4954; UA-CL-LTD-4964.

to Mr. Christoff as his attorney had alleged. This is a matter of plan administration, not a communication on a non-fiduciary matter.

## IV. Conclusion

For all the reasons discussed above, the Court concludes that the fiduciary exception defeats Unum's claim of privilege for the following communications:

- UA-CL-LTD-4874;
- UA-CL-LTD-4913;
- UA-CL-LTD-4932-33;
- UA-CL-LTD-4956-57;
- UA-CL-LTD-4967-68; and
- UA-CL-LTD-5366.

Date: March 15, 2018                              *s/Katherine Menendez*
                                                  Katherine Menendez
                                                  United States Magistrate Judge