# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Michael J. Christoff, | Civil No. 17-3512 (DWF/KMM) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Unum Life Insurance Company of America, | |
| Defendant. | |

---

Mark M. Nolan, Esq., and Robert J. Leighton, Jr., Esq., Nolan, Thompson, & Leighton, counsel for Plaintiff.

Christopher J. Haugen, Esq., and Terrance J. Wagener, Esq., Messerli & Kramer P.A., counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on cross motions for summary judgment brought by Plaintiff Michael J. Christoff ("Christoff") (Doc. No. [99]) and Defendant Unum Life Insurance Company of America ("Unum") (Doc. No. [91]). For the reasons set forth below, the Court grants Christoff's motion in part and denies Unum's motion. As described more fully below, the Court awards Christoff damages in the amount of his unpaid benefits with interest.

# BACKGROUND

The factual background for the above-entitled matter is clearly and precisely set forth in previous orders issued in this matter which are incorporated by reference here. (*See* Doc. No. 52 ("February 2018 Report and Recommendation), Doc. No. 68 ("August 2018 Order").) The Court notes certain facts relevant to this Order below, with additional facts as furnished by the parties through the proceedings.[1]

Christoff asserts two claims against Unum under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA"), arising out of the termination of his long-term disability ("LTD") benefits under a group employee benefit plan (the "Plan") which was insured by Unum. (*See* Doc. No. 1 ("Compl.") ¶¶ 1, 7, 11.) Christoff participated in the Plan through his employer, Spencer Stuart. (*Id.* ¶¶ 5, 6, 9.)

The Plan became effective on September 1, 2001. (Doc. Nos. 29-35 ("Second Connolly Aff."), Doc. No. 30 at 120.) The LTD policy states that it consists of "all policy provisions and any amendments and/or attachments issued; employees' signed applications; and the certificate of coverage." (*Id.*) The LTD policy identifies its Certificate Section as its "certificate of coverage." (*Id.* at 129.) The certificate of coverage states: "If the terms and provisions of the certificate of coverage (issued to you)

---

[1]     The Court notes that the record in this case is complicated, and the parties' arguments are often muddled by the fact that Christoff has multiple policies with Unum and related companies, with pending disputes over claims related to these policies. (*See, e.g.* Doc. No. 35 at 472 (describing multiple claims).) The Court has reviewed the extensive submissions to the record —lamentably, often without the aid of clear or accurate citations—in order to recount the pertinent details in this Order with cites directed to a source, if not the sole source, for the information referenced.

are different from the policy (issued to the policyholder[2]), the policy will govern." (*Id.*) It further provides that "[w]hen making a benefit determination under the policy, Unum has discretionary authority to determine your eligibility for benefits and to interpret the terms and provisions of the policy." (*Id.*)

The policy defines disability, in pertinent part, as when Unum determines that the covered employee is "*limited* from performing the *material and substantial duties* of your *regular occupation* due to your *sickness* or *injury*[.]" (*Id.* at 133 (emphasis in original).) "Regular occupation," in turn, is defined as "the occupation you are routinely performing when your disability begins," which Unum will determine by looking at "your occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer at a specific location." (*Id.* at 153.) The policy also provides that Unum "may require [Christoff] to be examined by a physician, other medical practitioner and/or vocational expert of [Unum's] choice," and that Unum "can require an examination as often as it is reasonable to do so." (*Id.* at 133.)

On September 26, 2002, Unum sent Spencer Stuart a document entitled "Amendment No. 1" with an attachment purported to replace the entire policy at issue, to be effective as of September 1, 2001. (*Id.* at 383.) Amendment No. 1 provides: "If this Amendment is unacceptable, please sign below and return this amendment to [Unum] . . . within 90 days of September 26, 2002. **YOUR FAILURE TO SIGN AND RETURN THIS AMENDMENT BY THAT DATE WILL CONSTITUTE ACCEPTANCE OF**

---

[2] Christoff's employer, Spencer Stuart, is identified as the policyholder. (*Id*. at 153.)

**THIS AMENDMENT.**" (*Id.* (emphasis in original).)  Below this language is an

unexecuted signature block for an officer of Spencer Stuart.  (*Id.*)

The replacement policy attached to Amendment No. 1 includes a Certificate

Section with language regarding conflicts between the certificate of coverage and the

policy, as well as Unum's discretionary authority, that is identical to that in the original

policy cited above.  (*Id.* at 393.)  The definitions of "Disability" and "Regular

Occupation," in addition to the statement that Unum "can require an examination as often

as it is reasonable to do so," also remain the same as before.  (*Id.* at 397, 419.)  The

replacement policy also contains a "Discretionary Acts" provision not included in the

original policy, which states:

> In exercising its discretionary powers under the Plan, the Plan Administrator, and any designee (which shall include Unum as a claims fiduciary) will have the broadest discretion permissible under ERISA and any other applicable laws, and its decisions will constitute final review of your claim by the Plan. Benefits under this Plan will be paid only if the Plan Administrator or its designee (including Unum), decides in its discretion that the applicant is entitled to them.

(*Id.* at 416; *see also id.* at 120-55.)

In November 2001, Christoff became disabled due to severe fibromyalgia and

received LTD benefits under the Plan for more than fifteen years.  (Compl. ¶¶ 8-10.)

Effective November 22, 2016, Unum determined Christoff was no longer disabled and

terminated his benefits.  (*Id.* ¶ 11.)  Christoff appealed the decision, and on June 15,

2017, Unum upheld its termination decision.  (*Id.* ¶ 12.)

Before Christoff became disabled, he was a partner at Spencer Stuart whose work

involved placing "high-level executives . . . in blue chip industries on a national basis,"

generating revenue of one to two million dollars a year, developing a network of contacts, constant availability to clients, and extensive travel. (Doc. No. 104 ("Pl. Mem.") at 4.)

From the time of his initial diagnosis, Christoff's primary treating physicians have included Drs. Hickman, Newcomb, Davidson, and Rodysill at the Mayo Clinic's Fibromyalgia Clinic. (*Id.* at 3, 5.) His treating physicians have consistently noted objective signs, e.g. trigger points,[3] and Christoff's subjective complaints, which they have found to be credible. (*Id.* at 5.) Throughout the course of his treatment, Christoff's physicians have placed restrictions and limitations on his activity, and all have found that Christoff is "totally disabled from any occupation which requires a 40-hour work week on a consistent, reliable basis." (*Id.*) For example, Dr. Hickman stated in 2004 that Christoff was "[t]otally disabled from severe fibromyalgia" and suffered "profound

---

[3]     Christoff notes that the Eighth Circuit has recognized trigger-point test findings as objective evidence of fibromyalgia. (Pl. Mem. at 3 (citing *Chronister v. Baptist Health*, 442 F.3d 648, 656 (8th Cir. 2006).) Christoff also notes that the doctor who examined Christoff as part of Unum's review process "never performed" the trigger point test. (*Id.*) This Court observes that the Mayo Clinic's own website now reject such tests as definitive, instructing that "[n]o one test can be used to diagnose fibromyalgia" (Dr. Christopher Aakre, *Mayo Clinic Q and A: How is fibromyalgia diagnosed?*, Mayo Clinic (Jun. 7, 2019) (avail. at https://newsnetwork.mayoclinic.org/discussion/mayo-clinic-q-and-a-how-is-fibromyalgia-diagnosed/)). While "[o]ld guidelines required tender points," newer diagnostic criteria were developed because "fibromyalgia symptoms can come and go, so a person might have 11 tender spots one day but only eight tender spots on another day" and non-specialist doctors administered such tests inconsistently. (Mayo Clinic Staff, *Fibromyalgia: Understand the diagnosis process*, Mayo Clinic (Aug. 19, 2017) (avail. at https://newsnetwork.mayoclinic.org/discussion/mayo-clinic-q-and-a-how-is-fibromyalgia-diagnosed/)). However, neither party disputes Christoff's diagnosis with fibromyalgia, nor do they dispute the qualifications of his treating physicians— rather, their dispute hinges on Christoff's personal symptoms and capacity for work. The Court acknowledges the well-established potential for severe disability due to fibromyalgia, which is not a matter of controversy in this case.

fatigue with slow recovery from any significant activity or travel." (*Id.*)  By 2013, Dr. Rodysill noted that they had "tried everything available," "unless new therapies come out, further treatment is unlikely to be beneficial," and concluded that Christoff was "certainly disabled by this condition," noting that his diagnosis was "very clear and confirmed."  (*Id.* at 6.)  In March of 2016, Dr. Rodysill stated that Christoff's fibromyalgia "is stable— nothing has changed" with "[n]o improvement expected," causing Christoff to have difficulty traveling for one hour.  (*Id.*)  In July of the same year, Dr. Rodysill noted that "[t]here has been no change in [Christoff's] fibromyalgia for many years."  (*Id.*)

Unum evaluated Christoff's condition as it related to his benefits several times, conducting independent medical examinations ("IME's).  Exams carried out in 2003 over a period of three days resulted in Unum's evaluators finding that Christoff's subjective complaints were credible and that his limited endurance rendered him unable to perform "mentally demanding tasks" full time or to meet the "travel demands of his occupation." (*Id.* at 7.)  Claim notes and reviews by Unum's own medical reviewers also found Christoff's disability claim valid.  (*Id.* at 8.)  For example, a 2005 clinical review based its support on Christoff's credible and consistent subjective symptoms —which were "medically supported"—restricted his activity "from anything greater than sedentary." (*Id.*)  Christoff avers that in 2009, Unum analyzed his claim "in order to offer a settlement" and concluded that the results of three IMEs showed that Christoff's symptoms "were genuine and totally disabling," and he "will likely never be able" to return to work.  (*Id.*)  A 2014 review noted that Christoff's condition is "totally

debilitating" at least two days per week and "substantially limited" the remaining days, and due to the unpredictable nature of his condition, it is unlikely that he would have reliable functional capacity to return to work "as an Executive Search Consultant." (*Id.*)

In 2007, Christoff was awarded Social Security Disability Insurance (SSDI) benefits after a finding by an administrative judge that his effective disability date was December 15, 2001, and that Christoff's subjective complaints appeared "fully credible." (*Id.* at 9; *see also* Second Connolly Aff., Doc. No. 31 at 482.) In awarding him benefits, the administrative judge also found that Christoff's symptoms prevent him from engaging in any work activity on a full-time basis, that he can no longer perform any of his past relevant work, and that "there are no other jobs existing in significant numbers in the national economy that he is capable of performing on a full time, competitive basis." (*Id.*)

In March of 2016, Christoff provided Unum with a description of his condition and activities. (Second Connolly Aff., Doc. No. 33 at 507.) Christoff explained that over the years he "developed a low-intensity lifestyle that allows [him] the flexibility to deal with [his] variable energy while maintaining a reasonable quality of life" and continuing activities such as volunteering with his church as his symptoms allow and writing articles and blog postings that had yet to generate any income. (*Id.* at 510.) Upon Unum's June 28, 2016 request (*id.* at 514), Christoff provided additional description of these activities in July 2016, explaining that he does not schedule many activities and "always give[s] [himself] a buffer both before and after activities" (*id.* at 515). Further, Christoff

noted that his "efforts do not include any deadlines or set schedules" and that he makes progress "as [he] is physically able." (*Id.*)

In June of 2016, Unum had a Vocational Rehabilitation Counselor (VRC) conduct a vocational review of Christoff's records. (Second Connolly Aff., Doc. No. 33 at 355.) VRC Arthur Dumont concluded that the requirements for Christoff's own occupation had not changed since his claim began, still requiring a "light" level of physical activity (greater than "sedentary"), as well as extensive travel. (*Id.*) Dumont confirmed that the job description for the position at Spencer Stuart Christoff performed before his disability had not changed in the intervening years. (*Id.*) Unum had another VRC, Carrie Gregor (then known as Carrie Johnson), review Christoff's occupation shortly thereafter, on July 7, 2016, using an occupational code from the United States Department of Labor Dictionary of Occupational Titles (DOT) that describes an job with physical demands of a mostly administrative position including constant walking, sitting, and use of a keyboard as well as occasional standing and reaching. (*Id.* at 453.)

In August 2016, Unum's internal medical professionals conducted a roundtable discussion and medical review of Christoff's case; their proceedings all reached the conclusion that Christoff remained disabled. (Pl. Mem. at 12.) Specifically, Dr. Joseph Antaki noted in a "doctoral consult" dated August 18, 2016 that Christoff was not observed exhibiting activity during any recent surveillance, and though Christoff "has demonstrated functional capacity (by receiving a Master's degree in theology, evangelizing, online lecturing) and the AP has recommended gradually increasing activity level to 60 minutes of low-impact aerobic activity per day, [Christoff's] pain and

fatigue would support [restrictions and limitations] that would preclude a sustained level of work activity." (*Id.* at 538.) Dr. Antaki reported that improvement in Christoff's condition was not expected, and recommended as "next steps" that Christoff's records be updated in one year. (*Id.*)

On August 25, 2016, VRC Gregor completed another occupational review after Unum asked her to "revisit" the occupational description used in her July 7 vocational review, particularly the demands for standing and walking on a constant basis, and to also advise regarding travel requirements. (*Id.* at 545.) VRC Gregor changed the physical demands for Christoff's occupation to a sedentary level, with occasional walking, and determined that only occasional travel would be required, "likely done locally and by vehicle," without defining "local" (or for that matter, "vehicle") or providing the basis for these revised findings. (*Id.*)[4]

---

[4]      It is not clear from the administrative record what prompted this move on Unum's part, and neither party has offered an explanation beyond Christoff's belief that Unum was motivated to justify a termination of benefits.  Again, the Court notes that the existence of multiple claims seems to have caused confusion; for example, a document in the administrative record dated August 25, 2016 refers to surveillance completed June 9, 2016, showing no activity on Christoff's part but notes that he "is affiliated with a men's religious organization," wrote articles, and took part in public speaking and "online lectures."  (Second Connolly Aff., Doc. No. 33 at 550.)  The August 25 entry also reads: "Why was the claim transferred to a DBS?  Common claim with IDI- Policy differences regarding the definition of disability (regular occupation) Recent BRI findings indicate EE's activity level has increased; review needed to determine if EE has FC to perform demands of regular occupation."  (*Id.*)  Another entry in Unum's records, dated November 11, 2016, states that "we have an updated IME which agrees [Christoff] now has capacity to 40 work . . . This is compelling evidence of improved capacity since [Christoff] was last assessed by SSDI."  (Second Connolly Aff., Doc. No. 34 at 842.)  Without clarification from the parties, the Court cannot determine the significance of such statements, but concludes that the administrative record is unclear as to which

Dr. Antaki was provided the new occupational information and conducted another medical review on August 30, this time concluding that Christoff was not disabled from his occupation. (*Id.* at 595.) Christoff's treating physician, Dr. Kirk Rodysill, was also provided the new job description and asked to respond. (Pl. Mem. At 15.) On September 8, 2016, the two doctors spoke, and Dr. Rodysill stated that not only could Christoff no longer perform his former job due to his condition, at most on "some days he might be able to work an hour or two," but on other days, Dr. Rodysill did not think Christoff "could do anything really" and that this would be inconsistent and hard to predict. (*Id.* at 15-16.) Unum also sought the opinion of its in-house doctor, Dr. Norman Bress, who stated in his September 2016 review of Christoff's records that Christoff "is very active" and had been able to work "for many years despite his [fibromyalgia] symptoms" and noted that the records only occasionally mentioned "pain related weakness." (Second Connolly Aff., Doc. No. 33 at 596-97.) Dr. Bress noted that Christoff had previously met the diagnostic criteria for fibromyalgia, but agreed with Dr. Antaki's August 30 findings. (*Id.*)

Unum went on to have an IME done by Dr. Adam Locketz on November 15, 2016. (Doc. Nos. 105-1-12 ("Third Nolan Aff."), Doc. No. 105-3 at 3; Second Connolly Aff., Doc. No. 34 at 806.) Dr. Locketz produced a report after a short physical exam of Christoff and review of his medical records that concluded Christoff has the functional

claims were being addressed in various statements relied upon by Christoff to show misconduct by Unum.

capacity to do sedentary work on a full time (40 hour per week) basis and that his physical exam yielded "mild objective findings." (*Id.* at 831.) Dr. Locketz did not have Christoff's SSDI records for review. (Pl. Mem. At 18.)[5]

Unum's claims procedure manual instructs that "Unum has an obligation to consider all medical information, which includes giving deference to the opinion of the claimant's [attending physicians ("AP's)] when making a medical determination." (Third Nolan Aff., Doc. No. 105-6.) It also states that an opinion from an AP "with a higher level of expertise, specialization or training is generally more persuasive than the opinion from a provider with a lesser level of expertise, specialization, or training," and directs that "the lack of current care or treatment . . . may not impact our claim decision if the claimant would not benefit from treatment." (*Id.* at Doc. No. 105-7; 105-11 at 2.) Further, the "care requirement" is "generally" met "so long as claimant is being seen by a physician at intervals recommended by the physician." (*Id.*) With respect to the weight to give an award of SSDI benefits, the manual instructs that Unum "will give significant weight to the [Social Security Administration's] determination that the claimant is

---

[5]     Christoff argued in these proceedings that Unum "failed/didn't bother to find" records showing that Dr. Locketz withdrew his application to practice medicine in Ohio in March of 2017, urging the Court to count this as a negative factor weighing against Unum's conduct throughout the review and denial of Christoff's benefits. (*See, e.g.,* Pl. Mem. At 18 n. 7; Third Nolan Aff. at Doc. No. 105-5.) The Court finds that this is not a significant flaw in the review process and does not rise to the level of a procedural irregularity. Dr. Locketz was (Third Nolan Aff. at Doc. No. 105-3), and as Unum offered at oral arguments (Doc. No. 114), remains a licensed medical doctor authorized to practice medicine in the State of Minnesota. It was reasonable for Unum to rely upon him for the purposes of the medical review, and the Court declines Christoff's invitation to second-guess the qualifications of a duly licensed medical professional where such a foray is unnecessary to decide this case.

disabled *unless* there is compelling evidence" that the award of SSDI was based on an error of law or abuse of discretion, inconsistent with applicable medical evidence; or inconsistent with the definition of disability contained in the applicable insurance policy. (Third Nolan Aff., Doc. No. 105-10 (emphasis in original).) Without such compelling evidence, the manual instructs that Unum will give the SSDI award "significant weight and will agree with the award *unless* . . . there is other evidence that clearly shows that the claimant is not disabled," for example, if a claimant were to be found to be working after claiming to be unable to do so. (*Id.* (emphasis in original).) Finally, the manual requires that if Unum disagrees with the SSDI finding, it will "articulate the reason and analysis" and "support that reason and analysis with reference to facts and information in the claim file documentation." (*Id.*)

During his appeal of the termination of his benefits, Christoff provided Unum with additional records including the results of a functional capacity examination (FCE) conducted by VRC Dr. Justin King and an additional statement from Dr. Rodysill. (Pl. Mem. at 19-20.) Dr. King found that Christoff's condition precluded any employment on a sustained, continuous basis. (*Id.* at 21.) Dr. Rodysill reiterated previous statements, again noting that Christoff's symptoms are severe, exacerbated by stress, high activity, and travel, and that his "modest levels of activity are done on an 'as possible' basis." (*Id.* at 20.)

Unum's in-house physician Dr. Scott Norris, reviewed Christoff's medical records on June 5, 2017. (*Id.* at 23.) In his report, Dr. Norris reaches conclusions contradicting those of several of the medical professionals who had previously examined and treated

Christoff, stating that Christoff suffered no "pain-limited weakness" or reduced range of motion, and expressing doubts about Christoff's lack of medication, ignoring the rationale provided throughout his records by his treating physicians. (*Id.* at 24.)

In a fifteen-page letter dated June 15, 2017, Unum detailed its final decision to terminate Christoff's LTD benefits.[6] (Second Connolly Aff., Doc. No. 35 at 465.) Unum affirmed its initial decision that Christoff "was able to perform the duties of his regular occupation" and "was no longer disabled according to the policies and benefits were no longer supported." (*Id.*) Unum discounted Dr. Rodysill's assertions that Christoff could not return to work, countering with a summary of Christoff's activities including completion of a theology degree through studying online and with DVDs, "five formal speaking engagements in the last two years" in Milwaukee, Wisconsin and Mundelien, Illinois, for which they presumed he flew from his home in Minnesota, and speaking at his parish six to eight times a year. (*Id.* at 469.) Unum acknowledged that as recently as September 8, 2016, Dr. Rodysill said that he "still felt [Christoff] would not be able to sustain any work capacity with any regularity," but noted that a "second physician reviewed the available information, and concluded Mr. Christoff was not precluded from performing at the functional capacity required by his occupation." (*Id.* at 470.) Unum did not close Christoff's claim based upon the opinions of its physician reviewers, however— "[i]nstead, an IME was scheduled." (*Id.*) Dr. Locketz, the letter explained,

---

[6]     The letter also discussed Unum's appeal review, and ultimate denial, of Christoff's Life Insurance Waiver of Premium (LWOP) claim, and noted that Christoff's Individual Disability (ID) claim was being addressed in a separate appeal. (*Id.*)

analyzed Christoff's capacity by the standard for the individual disability claim rather than that for the LTD benefits, using the more rigorous demands of Christoff's previous job as he had performed it, and found that Christoff could perform at that level. (*Id.* at 472.) Based on this full review and more demanding occupation, Unum concluded that Christoff was no longer disabled. (*Id.*) As for the concerns Christoff raised during his appeal, Unum explained that its decision differed from that of the Social Security Administration because Unum had more recent medical information showing that Christoff's condition "has improved significantly," along with the IME findings and information about Christoff's activities, "which are significant and demonstrate improved capacity." (*Id.* at 475-76.) Unum noted that Christoff took issue "with the various vocational reviews" but explained that "the vocational issues for the LTD claim and the ID claim, as well as the LWOP claim, are different" because Christoff's occupation was "defined differently in each of the policies, and so the vocational reviews are not interchangeable." (*Id.*)

Spencer Stuart paid Christoff's premiums for health insurance, long-term care insurance, and a $50,000 life insurance policy while he received disability benefits and stopped paying these premiums in July 2017 when his disability benefits terminated. (Doc. No. 107 ("Second Christoff Aff.") at 2-3.) Since that time, Christoff has paid for his health insurance out-of-pocket, and he contends that without his benefits, he was unable to afford to pay the cost of converting an existing term life insurance policy to permanent whole life insurance. (*Id.* at 2.)

Christoff alleges that Unum failed to give Christoff's claim for benefits a full and fair review by deliberately and wrongly manipulating the claim review process in order to reach its decision to terminate. (*Id.* ¶ 15.) Specifically, Christoff alleges that Unum intentionally mischaracterized the duties of Christoff's own occupation, failed to provide its reviewer with medical records supporting Christoff's claims or the correct description of Christoff's occupational duties, determined that Christoff was not disabled in spite of its own medical personnel's findings, and failed to give due deference to Christoff's treating physicians in violation of its own policies. (*Id.*) Under Count I of Christoff's complaint, he asserts violation of the Plan, ERISA, and breach of Unum's fiduciary duties and seeks to recover LTD benefits and obtain a clarification of rights pursuant to 29 U.S.C. § 1332(a)(1)(B). (*Id.* ¶ 14.) Under Count II, Christoff alleges Unum breached its fiduciary duty under ERISA and seeks "the equitable remedy of surcharge" for attorney fees and his costs to obtain substitute health care coverage and replace other policies pursuant to 29 U.S.C. § 1132(a)(3). (*See id.* ¶ 19.)

Unum argues that the decision to terminate Christoff's benefits was made according to the requirements set forth in the Plan, which called for periodic reviews, and further, Unum denies any untoward behavior in its processing of the claim. Unum points to mistakes in Christoff's interpretation of the administrative record in support of its defense of its reasoning and conclusions, and notes that Christoff's claims are in part based upon benefits never contemplated in the agreement at issue here.

## DISCUSSION

## I.     Legal Standards

### A.     Summary judgment

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Weitz Co. v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

This Court will consider the cross-motions drawing inferences against each movant as warranted. *See, e.g., Wermager v. Cormorant Twp. Bd.*, 716 F.2d 1211, 1214 (8th Cir. 1983). The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record that create a genuine issue for trial. *Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.     ERISA

The Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq., governs the insurance policy in question.  Employee benefit plans under ERISA must "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  29 U.S.C. § 1133(2).  Following such a review, a beneficiary of a plan governed by ERISA may bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).

### A.     Standard of review

"[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  When a plan gives discretionary authority to the administrator or fiduciary to determine eligibility for benefits or to construe the terms of the plan, the Court reviews the decision to deny benefits for an abuse of discretion.  *See id.; see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008); *Waldoch v. Medtronic, Inc.*, 757 F.3d 822, 829 (8th Cir. 2014), *as corrected* (July 15, 2014).

As this Court has previously found over Christoff's objections, the

abuse-of-discretion standard applies to this matter based on the clear language in the

policy granting Unum discretionary authority.[7]  (August 2018 Order at 10.)

Under the abuse-of-discretion standard, "the administrator's decision should be

reversed 'only if it is arbitrary and capricious.'"  *Green v. Union Sec. Ins. Co.*, 646 F.3d

1042, 1050 (8th Cir.2011) (quoting *Midgett v. Wash. Grp. Int'l Long Term Disability*

*Plan*, 561 F.3d 887, 896 (8th Cir. 2009)).  "A court is not to substitute its own judgment

for that of the plan administrator."  *Alexander v. Trane Co.*, 453 F.3d 1027, 1031 (8th

Cir. 2006).  The issue is whether the decision was supported by substantial evidence

which means "more than a scintilla but less than a preponderance."  *Waldoch*, 757 F.3d at

832 (quoting *Midgett,* 561 F.3d at 897) (internal quotation marks omitted).  The Court

"may consider both the quantity and quality of evidence before a plan administrator."

*Wise v. Kind & Knox Gelatin, Inc.*, 429 F.3d 1188, 1190 (8th Cir. 2005) (citation

omitted).  The question for the Court is whether a "reasonable person *could* have reached

a similar decision, given the evidence before him, not [whether] a reasonable person

*would* have reached that decision."  *Prezioso v. Prudential Ins. Co. of Am.*, 748 F.3d 797,

805 (8th Cir. 2014) (quoting *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807

(8th Cir.2002) (emphasis in original)).  A court examining whether an administrator

abused its discretion, therefore, must carefully scrutinize the administrator's decision and

---

[7]     The Court discussed its findings with respect to the policy language governing
Unum's discretionary authority at greater length in its August 2018 Order and will not
repeat its full analysis here.  (*See generally* August 2018 Order; February 2018 Report
and Recommendation.)

determine whether it was "extremely unreasonable, extraordinarily imprudent, or arbitrary and capricious." *Meyers v. Hartford Life & Accident Ins. Co.*, 489 F.3d 348, 351 (8th Cir. 2007) (citation omitted). "When . . . a conflict of interest exists because the Plan is both the decision-maker and the insurer, [the Court] take[s] that conflict into account and give[s] it some weight in the abuse-of-discretion calculation." *Carrow v. Standard Ins. Co.*, 664 F.3d 1254, 1258–59 (8th Cir. 2012) (citing *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1038–39 (8th Cir. 2010)).

**B.      Timing of the termination**

This Court asked counsel for both parties to address a question unanswered in the papers submitted in this case:  What prompted Unum's most recent decision to re-evaluate Christoff's disability status?  Neither party could provide a definite answer, but they agreed that the additional review, carried out so close in time to the previous review, was likely the result of a different person taking responsibility for the file and deciding to revisit the decision.  (Doc. No. 114, Motion Hearing July 26, 2019.)  While this does not necessarily indicate wrongdoing, it bolsters the Court's conclusion, based on the entire record before it, that Unum's process was indeed arbitrary and capricious.

As Unum has noted, it has a duty to oversee its plans with a mind to best serve the interests of all beneficiaries, and it can be appropriate to re-evaluate a claim in light of information that might indicate a change in circumstances.  *See, e.g., Frerichs v. Hartford Life & Acc. Ins. Co.*, 875 F.Supp. 2d 923, 947 (D. Minn. 2012).  Unless information available to an insurer "alters in some significant way," previous payments of benefits "must weigh against the propriety of an insurer's decision to discontinue those

payments." *McOsker v. Paul Revere Life Ins. Co.*, 279 F.3d 586, 589 (8th Cir. 2002).

The brief period between the last time that Christoff's claim was approved, paired with

the very recent analyses of his medical records that considered up-to-date submissions

regarding his activities and his doctors' assessments, heavily weigh against the propriety

of Unum's latest review of Christoff's benefits.  Without any evidence to the contrary,

and with Unum's own admission that this was likely the result of second thoughts within

Unum's organization and not prompted by any new information, the Court concludes that

it was a serious procedural irregularity to subject Christoff to further review so close in

time to his last successful completion of the process.

## C.    Christoff's occupation

Under a deferential abuse-of-discretion standard, the Court finds Unum's

interpretation of the term "regular occupation" in the LTD Plan to be reasonable.  In

assessing the reasonableness of Unum's interpretation of the plan, the Court must

consider five factors:  (1) whether the interpretation is consistent with the goals of the

plan; (2) whether it renders any language in the plan meaningless or inconsistent;

(3) whether it conflicts with the requirements of ERISA; (4) whether the administrator

has interpreted the words at issue consistently; and (5) whether the interpretation is

contrary to the clear language of the plan.  *See Brake v. Hutchinson Tech., Inc.*, 774 F.3d

1193, 1197 (8th Cir. 2014) (citing *Finley v. Special Agents Mut. Benefit Ass'n, Inc.*, 957

F.2d 617, 621 (8th Cir. 1992)).  Ultimately, the Court "must defer to [Unum's]

interpretation of the plan so long as it is reasonable, even if the court would interpret the

language differently as an original matter." *Darvell v. Life Ins. Co. of N. Am.*, 597 F.3d 929, 935 (8th Cir. 2010) (internal quotation marks and citation omitted).

The policy clearly states that "regular occupation" is defined as the insured's "occupation as it is normally performed in the national economy, instead of how the work tasks are performed for a specific employer at a specific location." (Second Connolly Aff., Doc. 30 at 419.) While it does seem that over the course of Christoff's fifteen-plus years of receiving LTD benefits, both parties relied upon an occupation as defined more specifically by Spencer Stuart and as previously performed by Christoff, the policy itself does not call for such an interpretation.

The Court concludes, however, that despite the amount of ink spilt over this issue by both parties, it is a red herring. While it was not an abuse of discretion to use the more generic occupational definition, Unum did abuse its discretion by arbitrarily changing the level of physical demand without substantial evidence, or even any reasoning beyond one VRC's flat assertion that it would be reasonable to change it. Moreover, the balance of the medical evidence overwhelmingly shows that Unum's evaluators ignored the seriousness of Christoff's limitations and that he would be unable to perform any occupation on a full time, regular basis.

### D. Unum's analysis of the medical evidence

The Court concludes that Unum abused its discretion in relying heavily on its independent reviewers' opinions and in-house physician's review of the record in concluding that Christoff was not disabled under the terms of the LTD Plan. The Supreme Court has held that "courts have no warrant to require administrators

automatically to accord special weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003); *Payzant v. UNUM Life Ins. Co. of Am.*, 402 F. Supp. 2d 1053, 1062 (D. Minn. 2005). Indeed, an insurer "may rely upon the reports of consulting, non-examining physicians over the reports of treating physicians." *Carrow*, 664 F.3d at 1259 (citing *Weidner v. Fed. Express Corp.*, 492 F.3d 925, 930 (8th Cir. 2007)). However, in reviewing Unum's reliance on the independent reviewers' reports under an abuse-of-discretion standard, the Court "may consider both the quantity and quality of evidence" available to Unum. *Wise*, 429 F.3d at 1190 (citation omitted). Applying these principles, the Court concludes Unum abused its discretion.

An insurer is "not free to accept [an independent reviewer's] report without considering whether its conclusions follow logically from the underlying medical evidence." *Willcox v. Liberty Life Assurance Co. of Boston*, 552 F.3d 693, 700–01 (8th Cir. 2009) (quoting *Abram v. Cargill, Inc.*, 395 F.3d 882, 887 (8th Cir. 2005)). It is an abuse of discretion for an insurer to rely on an independent reviewer's report that reflects an "incomplete, selective review of the medical evidence." *Id.* at 702. An administrator "may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Willcox*, 552 F.3d at 701 (internal quotation marks and citations omitted). It is an abuse of discretion to ignore relevant evidence. *Gerhardt v. Liberty Life Assur. Co. of Bos.*, 736 F.3d 777, 780 (8th Cir. 2013).

Unum's own manual calls for deference to treating physicians' opinions and recognizes that the opinions of more experienced specialists should be weighed more heavily against those of less qualified doctors where applicable.  Several doctors, over several years, with directly relevant specialization and experience, adamantly opined that Christoff was disabled to such an extent that he is not able to perform any job on a consistent basis.  Christoff's medical records are extensive, detailed, and consistent.  This matter does not come down only to an abuse of discretion in weighing evidence, it also involves misstating the record.

Christoff's treating physicians have specialized training and experience in treating patients with fibromyalgia, and they are particularly familiar with Christoff's condition having treated him continually over many years.  While the Court is not persuaded that Unum's evaluators were unqualified *per se*, the opinions of Christoff's own doctors were far better supported.  Moreover, Unum's interpretation of the medical records fabricated conflict and inconsistency where none existed—Christoff's submissions have been thorough and consistent, and Unum's evaluators did not directly contradict the evidence presented in support of Christoff's claim.  Rather, they largely agreed until the very latest reviews, during which Unum's in-house doctor ignored information unfavorable to the termination decision.

If this were a case of weighing credible evidence against credible evidence, this Court would be obligated to defer to Unum's judgment.  "Only when the evidence relied on is 'overwhelmed by contrary evidence' may the court find an abuse of discretion." *Whitley v. Standard Ins. Co.*, 815 F.3d 1134, 1142 (8th Cir. 2016) (citing *Coker v. Metro*

*Life Ins. Co.*, 281 F.3d 793, 799 (8th Cir. 2002)).  Such is the case here. Unum's selective

presentation of evidence to its reviewers and disregard for the adamant opinions of

Christoff's doctors leads the Court to conclude that it was an abuse of discretion.[8]

## III.     Award of Past Due Benefits and Reinstatement of Policy

ERISA contemplates that a court may award benefits to a prevailing plaintiff in a

civil action challenging an insurer's denial.  *See* 29 U.S.C. § 1132(a)(1)(B) (providing

that a participant or beneficiary may bring a civil action "to recover benefits due to him

under the terms of his plan . . .").  At the same time, the Eighth Circuit has explained that

the appropriate remedy is a remand for reconsideration when the insurer has violated 29

U.S.C. § 1133(2)'s requirement to provide a full and fair review.  *See Brown v. J.B. Hunt

Transp. Servs., Inc.*, 586 F.3d 1079, 1087 (8th Cir. 2009).  Similarly, the Eighth Circuit

has held that "[a] reviewing court must remand a case when the court or agency fails to

make adequate findings or explain the rationale for its decision."  *Abram*, 395 F.3d at 887

(citation omitted).  However, it may be appropriate for the Court to enter judgment in

---

[8]     For the reasons stated above, the Court concludes Unum abused its discretion in denying Christoff's claim for LTD benefits. The Court therefore finds it unnecessary to address Christoff's additional arguments regarding Unum's structural conflict of interest or history of abuse of discretion that were neither well-developed nor extensively argued in the record.  The Court notes that Unum's conflict of interest did not weigh heavily in the Court's abuse-of-discretion calculation, and the Court would have reached the same conclusion whether or not a conflict existed. "A conflict of interest can 'act as a tiebreaker' when the issue is close and can assume 'great importance' 'where circumstances suggest a higher likelihood that it affected the benefits decision.'" *Jones v. ReliaStar Life Ins. Co.*, 615 F.3d 941, 946 (8th Cir. 2010) (quoting *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 117 (2008)) (internal citations omitted).  Here, the Court does not find this to be a close case but rather a clear case in Christoff's favor.  While the Court believes it is clear that Unum abused its discretion, the Court does not consider Unum's conflict of interest to be a determinative factor in this case.

favor of a claimant rather than remanding the claim when the insurer abused its discretion, the claim has been pending for a significant period of time, and "a remand would needlessly delay the already long-delayed benefits payments." *Chronister v. Unum Life Ins. Co. of Am.*, 563 F.3d 773, 777 (8th Cir. 2009) (remanding the case to the district court for entry of judgment in the plaintiff's favor when the benefits claim had been pending for more than a decade). Further, it may not be necessary to remand for further proceedings when there are no meaningful questions of fact. *Sepulveda-Rodriguez v. MetLife Grp., Inc.*, --- F.3d ---, 2019 WL 3977550 at \*4 (8th Cir. Aug. 23, 2019).

Here, the parties agreed at the July 2019 motion hearing that the record forecloses the need for further proceedings, and the Court finds that there would be nothing gained by remanding the matter. The Court awards Christoff the LTD benefits past due and orders Unum to continue his benefits so long as he qualifies under the Plan.

## IV.    Count II Claim Under 29 U.S.C. § 1132(a)(3)

### A.    Payment of additional premiums would be duplicative

As discussed in the August 2018 Order, the types of relief available under § 1132(a)(3) of ERISA include those that "were *typically* available in equity." *CIGNA Corp. v. Amara*, 536 U.S. 421, 439 (2011) (citation omitted). Such relief includes the equitable remedy of "surcharge" or "make-whole relief" through which "[e]quity courts possessed the power to provide monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment." *Id.* at 441-42. The Supreme Court explained that "[t]he surcharge remedy extended to a breach of trust

25

committed by a fiduciary encompassing any violation of a duty imposed upon that fiduciary." *Id.* at 442. Post-*Amara*, the Eighth Circuit has clarified that ERISA plaintiffs may seek "make-whole, monetary relief under § 1132(a)(3)." *Silva v. Metro. Life Ins. Co.*, 762 F.3d 711, 724 (8th Cir. 2014). Further, it has explained that such plaintiffs can plead "alternative—as opposed to duplicative—theories of liability" as long as the plaintiff does not ultimately obtain duplicate recoveries. *Id.* at 726; *see also Jones v. Aetna Life Ins. Co.*, 856 F. 3d 541, 547 (8th Cir. 2017).

The crucial question is whether the relief requested is restitution or compensatory damages. *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 944 (8th Cir. 1999). Section 1132(a)(3)(B) limits recovery to equitable relief, not compensatory damages. *Knierem v. Grp. Health Plan, Inc.*, 434 F.3d 1058, 1061 (8th Cir. 2006). "Restitution seeks to punish the wrongdoer by taking his ill-gotten gains, thus, removing his incentive to perform the wrongful act again," while compensatory damages "focus on the plaintiff's losses and seek to recover in money the value of the harm done to him." *Kerr*, 184 F.3d at 944.

When asked directly by the Court at oral arguments in this matter how Christoff's lack of funds to make the payment in order to convert his life insurance policy was a separate injury qualifying for damages under Count II, the plaintiff's counsel built upon the arguments earlier submitted, responding that Christoff had made payments when he was receiving benefits but did not have the money to do so after Unum terminated his benefits. Unfortunately for Christoff, this line of reasoning amounts to an argument that if things were different, they wouldn't be the same, which is not a sufficient basis for an independent claim.

As counsel for Unum persuasively argued, Christoff is asking for the money he would have been paid and what he would have bought with the money had he earlier had it in hand by requesting compensation for the full value of gains he might have realized. This is speculative and not based in the agreement between the parties. "[I]n interpreting the terms of the plan, like all contracts, '[c]ourts must look at the ERISA plan as a whole.'" *Shaw v. Prudential Ins. Co. of Am.*, 566 Fed. App'x. 536, 539 (8th Cir. 2014) (quoting *Johnson v. Am. United Life Ins. Co.*, 716 F.3d 813, 820 (4th Cir. 2013)). The Eighth Circuit has found that "courts should give the language of the policy and [the summary plan description] a common and ordinary meaning and construe the documents as a reasonable person in the position of the [plan] participant, not the actual participant, would have understood the words." *Johnson v. United of Omaha Life Ins. Co.*, 775 F.3d 983, 987 (8th Cir. 2014). A court reviewing a denial of benefits for abuse of discretion should not consider information that was not before the plan administrator, but instead limit its review to the administrative record. *Jones*, 856 F. 3d at 549. It is not reasonable to hold Unum responsible for anticipating collateral consequences for the termination of benefits that are not addressed in the policy, and it is not a separate injury requiring additional relief for Christoff to have been denied the use of funds the Court is awarding under Count I. The loss of benefits is compensated by the award of damages under Count I, meaning that Christoff is not entitled to duplicative relief for lost benefits under his claims for Count II.

## B.    Interest

"Interest shall be allowed on any money judgment in a civil case recovered in a district court," and shall be calculated "at a rate at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."  28 U.S.C. § 1961.  ERISA does not expressly provide for prejudgment interest, but such an award is permitted under 29 U.S.C. § 1132(a)(3)(B) if a court finds it to be "appropriate equitable relief." *Mansker v. TMG Life Ins. Co.*, 54 F.3d 1322, 1330 (8th Cir. 1995).  The proper measure for the rate of interest is provided under 28 U.S.C. § 1961.  *Id.* at 1331.

Christoff urges the Court to award interest at a higher rate in order to more strongly discourage future impropriety on Unum's part.  (Pl. Mem. at 49.)  Citing opinions from the First and Second Circuits, Christoff argues that using Minnesota's state court judgment rate of 10% is appropriate.  (*Id.*)  This is far above the current rate under 28 U.S.C. § 1961(a) and the federal prime rate suggested in one of Christoff's cited cases.

The Court agrees that Unum should disgorge the benefits derived from wrongfully withholding Christoff's benefits through the payment of interest, but again, the Court declines Christoff's invitation to speculate on financial outcomes that may have been or to attribute exceptional foresight and cunning to Unum without any evidence in support of such contentions.  Interest shall be awarded in the amount directed by 28 U.S.C. § 1961.

## C. Attorneys' fees and costs

Christoff argues that an award of attorneys' fees and costs would be appropriate in this case. (Pl. Mem. at 50.) "[T]he court in its discretion may allow a reasonable attorneys' fee and costs of action to either party" in an ERISA action brought by a beneficiary, participant, or fiduciary. 29 U.S.C. § 1132(g)(1). In exercising such discretion, the Court considers the following factors:

> (1) the degree of culpability or bad faith of the opposing party; (2) the ability of the opposing party to pay attorney fees; (3) whether an award of attorney fees against the opposing party might have a future deterrent effect under similar circumstances; (4) whether the parties requesting attorney fees sought to benefit all participants and beneficiaries of a plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.

*Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966, 969 n. 4 (8th Cir.2002) (citing *Lawrence v. Westerhaus*, 749 F.2d 494, 496 (8th Cir. 1984)). These factors are not exclusive and should not be mechanically applied. *Id.* at 972. The Eighth Circuit has held that there is no presumption in favor of a fee award for prevailing plaintiffs in ERISA cases. *Id.* at 969–72.

In this case, the Court concludes that Christoff is entitled to an award of attorneys' fees and costs. In particular, the Court finds that such an award will have a beneficial deterrent effect in preventing Unum from abusing its discretion in future cases. Unum's heavy reliance on the questionable findings of its independent reviewers over the findings of Christoff's treating physicians and the Social Security Administration led it to reach a decision that was not supported by substantial evidence. An award of attorneys' fees may have the positive effect of encouraging Unum to more carefully exercise its

discretion in the future to ensure that its decisions are based upon a thorough review of the claimant's file. To determine the amount to which Christoff is entitled, the Court will entertain submissions of the parties, including an affidavit from Christoff's attorney outlining the reasonable fees and costs incurred in this matter. Unum may also submit a short letter brief in response to this affidavit, and Christoff may submit a reply.

## ORDER

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Matthew Christoff's Motion for Summary Judgment (Doc. No. [99]) is **GRANTED** in part. The Court awards Christoff damages in the amount of his unpaid LTD benefits from the date of termination, with interest in the amount consistent with the findings above.

2. Defendant Unum's Motion for Summary Judgment (Doc. No. [91]) is **DENIED**.

3. Plaintiff's attorney shall submit an affidavit outlining the current total of past due benefits payments with interest, and the reasonable fees and costs incurred in this matter no later than thirty days following the date of this Order. Defendant will have ten days to respond to this affidavit with a short letter brief, and Plaintiff shall have ten days thereafter to file a short letter brief in reply.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: September 30, 2019                    s/Donovan W. Frank
                                             DONOVAN W. FRANK
                                             United States District Judge