Michael J. Christoff,                                            Civil No. 17-3512 (DWF/KMM)

          Plaintiff,

v.                                                                           **MEMORANDUM**
                                                                                **OPINION AND ORDER**

Unum Life Insurance Company of
America,

          Defendant.

---

Mark M. Nolan, Esq., Jodell M. Galman, Esq., and Robert J. Leighton, Jr., Esq., Nolan, Thompson, & Leighton, counsel for Plaintiff.

Christopher J. Haugen, Esq., and Terrance J. Wagener, Esq., Messerli & Kramer P.A., counsel for Defendant.

---

## INTRODUCTION

This matter is before the Court on by Plaintiff Michael J. Christoff's ("Christoff") request for attorney's fees pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. (Doc. No. 117.) Defendant Unum Life Insurance Company of America ("Unum") contests Christoff's calculations of the reasonable fees and costs. (Doc. No. 125.) For the reasons set forth below, the Court grants in part and denies in part the application and awards Christoff $98,058.20 in attorneys' fees.

**BACKGROUND**

The factual background for the above-entitled matter is clearly and precisely set forth in previous orders issued in this matter which are incorporated by reference herein. (*See* Doc. Nos. 52, 68, 115.) Relevant here, the Court granted in part Christoff's motion for summary judgment and dismissed Unum's cross motion for summary judgment, awarding Christoff damages for Count I and dismissing Count II of his lawsuit, which asserted two claims related to the wrongful termination of employer-provided benefits.[1] (Doc. No. 115 (" Sep. 2019 Order").) The Court also found that Christoff is entitled to reasonable fees and costs and ordered the parties to submit materials detailing their respective positions on the issue. (*Id.*)

Christoff submitted an affidavit by his counsel (Doc. No. 117 ("Fifth Nolan Aff.")) in support of his Bill of Costs (Doc. No. 118 ("Bill of Costs").) Using the *Hensley* lodestar approach and criteria, Christoff requests an award of attorneys' fees totaling $206,123.50 for 489 hours of work performed by three attorneys—Mr. Nolan at a rate of $470 per hour, Ms. Tataryn at a rate of $450 per hour, and Ms. Galman at a rate of $385 per hour. (Fifth Nolan Aff. ¶ 1.[2]) The affidavit and time sheet do not break down the hours expended by attorney, requiring the Court to calculate the totals per attorney by

---

[1] The Court notes that both parties appealed the Sep. 2019 Order, and while Christoff withdrew his appeal, Unum's appeal as to the Sep. 2019 Order remains pending before the Eighth Circuit. (*See* Doc. Nos. 119, 120, 123, 124, 127.)

[2] The affidavit by Christoff's counsel is numbered but is not cleanly divided into paragraphs, with some numbered sections containing several paragraphs or bullet points. In the interest of consistency and clarity, the citations used herein designate numbered sections by paragraph, with subparagraphs noted where applicable.

examining each entry.  (*See id.*; Doc. No. 117-1, Ex. A ("Time Sheet").)  Mr. Nolan billed 207.5 hours' work, totaling $97,525.00 in fees; Ms. Galman listed 278.1 hours' work, totaling $107,068.50; Ms. Tataryn's part is 3.4 hours totaling $1,530.00.  (Time Sheet.)  Each of these attorneys have many years of experience with ERISA cases.  (Fifth Nolan Aff. ¶¶ 5, 8-9.)  Mr. Nolan states that these rates are the same as those he charges for non-contingency cases and are in line with the rates charged by comparably qualified attorneys in the community.  (*Id.* ¶ 10.3.)  In support of this last contention, Christoff additionally submits an affidavit from a lawyer with a similar practice attesting to the reasonableness of his attorneys' rates as well as this case's uncommonly voluminous record and the complexity of the issues litigated through the course of the proceedings, which she opines would require "a substantial amount of time, well in excess of the usual." (Doc. No. 117-3 ("MacKinnon Aff.") ¶¶ 15-19.)  This lawyer further avers that the rates requested are "well within the range for attorneys who practice in the ERISA area in this part of the country," based on her "review of national rates" and "taking into account that Minneapolis rates are likely somewhat lower than rates on the West Coast or in New York City."  (MacKinnon Aff. ¶ 17.)  Christoff also submits costs of $1,448,45 in total. (Bill of Costs.)

   Unum argues that Christoff's requested fees are unreasonable and offers a 2014 opinion from this district as an example of how other courts have analyzed similar requests from Christoff's counsel.  (Doc. No. 125 at 1-2.)  Unum suggests that rather than making billing adjustments entry by entry the Court should reduce the lodestar by a percentage to account for unreasonable hourly rates and inadequate documentation, and

3

subtract for multiple attorneys performing the same activity, excessive time spent, billing for administrative/clerical tasks and abandoned claims and theories, and fees associated with preparing the fee petition and Bill of Costs, suggesting that a reasonable fee would total $50,045.05. (*Id.* at 11.)

With respect to the award of unpaid benefits, Christoff submits a summary prepared by Unum with a total in the amount of $636,175.89.[3] (Doc. No. 117-2.) Unum does not dispute this amount in its reply. (*See generally*, Doc. No. 125.)

## DISCUSSION

### I. Legal Standards

#### A. Attorneys' fees under ERISA

As the Court noted in the Sep. 2019 Order, while there is no presumption that prevailing plaintiffs will be awarded fees, 29 U.S.C. § 1132(g)(1) provides that a district court may allow reasonable attorneys' fees and costs to either party in an ERISA action. (Sep. 2019 Order at 29 (citing *Martin v. Arkansas Blue Cross & Blue Shield*, 299 F.3d 966, 969-72 (8th Cir. 2002).) After consideration of the factors outlined in *Martin v. Arkansas Blue Cross & Blue Shield*, the Court found that Christoff is entitled to an award of attorneys' fees and costs. (*Id.* at 29-30.)

#### B. Reasonability of fees

"Just what is a reasonable attorneys' fee is a matter peculiarly within the district court's discretion." *Greater Kansas City Laborers Pension Fund v. Thummel*, 738 F.2d

---

[3] This amount included past due benefits and interest as of the date of Christoff's request. (Doc. No. 117 ¶ 11.)

4

926, 931 (8th Cir. 1984) (discussing reasonable attorneys' fees under § 1132(g)(2)). The Supreme Court provided the framework for determining reasonable fees in its *Hensley* opinion, which set forth the factors a district court should use in awarding fees to prevailing parties in litigation under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988. *Hensley v. Eckerhart*, 461 U.S. 424 (1983). The *Hensley* criteria have since been applied in other decisions concerning federal fee-shifting statutes. *Perdue v. Kenny A. ex re. Winn*, 559 U.S. 542, 552 (2010). Factors courts should consider include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley* at 430, n. 3. Many of these factors usually are subsumed within the initial calculation of the lodestar. *Id.*, n. 9.

The lodestar, calculated by multiplying the number of hours reasonably expended by the reasonable hourly rate, is the starting point in determining attorneys' fees. *Fish v. St. Cloud State Univ.*, 295 F.3d 849, 851 (8th Cir. 2002). "A reasonable rate is usually the ordinary rate for similar work in the community where the case has been litigated." *Id.* However, the "most important factor in determining what is a reasonable fee is the magnitude of the plaintiff's success in the case as a whole." *Wal-Mart Stores, Inc. v. Barton*, 223 F.3d 770, 773 (8th Cir. 2000) (citing *Jenkins by Jenkins v. Missouri*, 127

F.3d 709, 716 (8th Cir. 1997)). Where a plaintiff achieves only partial or limited success, the lodestar amount may be excessive. *Farrar v. Hobby*, 506 U.S. 103, 114 (1992).

The burden is on the fee applicant to document the appropriate hours expended and hourly rates. *Fish v. St. Cloud State Univ.*, 295 F.3d at 851. The district court is in the best position to assess the work performed by counsel and may use its familiarity with the case to decide a reasonable hourly rate for each attorney. *Id.* at 852. Courts should exclude hours that were not reasonably expended—for example, hours that were excessive, redundant, or otherwise unnecessary to a degree that a lawyer in private practice would be ethically obligated to exclude them from a fee submission to a client. *Hensley*, 461 U.S. at 434. Courts may reduce the fee award for reasons related to the quality of work performed or the documentation provided in the fee application. *Philipp v. ANR Freight Sys., Inc.*, 61 F.3d 669, 675 (8th Cir. 1995) (award reduced for clerical errors, duplicative and inflated efforts, and request for hours spent on clerical duties); *H.J. Inc. v. Flygt Corp.*, 925 F.2d 257, 260 (8th Cir. 1991) (court reduced award based on the quality of counsel's legal briefing and analysis). In determining reasonable hourly rates, district courts may rely on their own experience and knowledge of prevailing rates. *Hanig v. Lee*, 415 F.3d 822, 825 (8th Cir. 2005).

II. **Reasonable Fees and Costs**

A. **Fees**

To set the stage for its analysis, the Court points out that, as noted in the Sep. 2019 Order, simply citing to facts in the copious record was made difficult by the lack of clear or accurate citations in both parties' submissions. (Sep. 2019 Order at 2, n.1.) Further

confusing matters, Christoff is the holder of multiple related policies and is pursuing multiple related claims, which seems to have contributed to the inaccuracies.[4] (*Id.*) Christoff's counsel accounts for the duplication of efforts due to the related pending case in his petition, but only in discounting for time spent on depositions to be used in both cases and not for the overall redundancy in the legal issues involved or the time spent discussing the status of the litigation with the client. (Time Sheet at 10.)

Christoff contends that his fee request is justified in light of the circumstances of this case. Specifically, Christoff argues that his counsel's work was not duplicative because the volume of materials in the record demanded more than one attorney, which in turn required the attorneys to collaborate and review each other's work. (Fifth Nolan Aff. ¶ 2.1.) Christoff's counsel states that the plaintiff, Christoff, is "an accomplished executive" who "reasonably requested to be more involved in the strategy of this case, which necessitated several more client conferences" than would usually take place. (*Id.* ¶ 2.8.) His counsel notes that all three of Christoff's attorneys have extensive experience in the practice of law and have specialized in ERISA cases since 2001 or longer. (*Id.* ¶¶ 5, 8, 9.) To support the requested hourly rate, Christoff's counsel offers examples of attorneys' fees awarded in ERISA cases from outside this district and from non-ERISA cases within the district. (*Id.* ¶¶ 10.2.) Christoff also attempts to revive its argument, rejected by the Court in the Sep. 2019 Order, that the Court should award a prejudgment

---

[4] In particular, the administrative record seems to include documents related to Christoff's other pending matter. (*See, e.g.*, Sep. 2019 Order at 9, n. 4; Doc. No. 33 at 550; *Christoff v. Paul Revere Life Ins. Co.*, Civ. No. 17-3515 (JRT/TNL) (D. Minn.)).

7

interest rate higher than provided for by statute by arguing that without a substantial attorneys' fee award, "there will be no deterrent effect because the prejudgment interest rate under 28 U.S.C. § 1961 is approximately 1.788%." (*Id.* ¶11.3; *see also* Sep. 2019 Order at 28.) Christoff's counsel concedes that the typical ERISA case is difficult and time consuming. (*Id.* ¶ 3.)

Unum argues that the hourly rates requested for Christoff's counsel are unreasonably high and vaguely documented. (Doc. No. 125 at 2-3.) Unum further argues that the drafting of pleadings took an unwarranted length of time in consideration of their lack of complexity and routine nature and that a great deal of administrative and clerical work was performed by attorneys rather than non-attorney staff. (*Id.* at 6-8.) As an example, Unum cites the 12-plus hours spent by Galman on cross-checking page numbers between the administrative file and briefing materials and the more than 20 hours billed for the preparation of the actual fee request. (*Id.* at 9-10.) Unum also points out several time entries in which more than one of Christoff's attorneys seem to be doing the same work unnecessarily, such as conference calls, meetings, and depositions listing two attorneys when only one attorney actively participated. (*Id.* at 3-4.) Additionally, Unum notes the amount of time spent on work that was ultimately of no benefit, including failed and abandoned arguments. (*Id.* at 10.)

The Court acknowledges the length of the record in pages as well as the length of the litigation itself, now stretching just over two years. However, it does not follow that Christoff's attorneys are entitled to a greater fee due to the length and depth of involvement this case required when they are already asking to be paid by the hour, and it

8

is apparent that this case has not dominated their practice entirely, as evidenced by the existence of the related and overlapping case. The Court also observes that many of Christoff's arguments either failed or were abandoned. Moreover, the Court observes that Christoff's attorneys are demanding a high hourly rate in part due to their practice focus and experience with ERISA law, which should result in an efficiency in their work that is not reflected in their request.

In *Werb v. ReliaStar Life Ins. Co.*, Judge Patrick Schiltz found a request made by Christoff's lead counsel and one of his co-counsel for payment for over 421 hours' work in another, separate ERISA case to be excessive, even in consideration of the "especially large administrative record."[5] *Werb v. ReliaStar Life Ins. Co.*, Civ. No. 13-669, 2014 WL 5431585, at *3 (D. Minn. Oct. 27, 2014). As Judge Schiltz noted, "one reason why an experienced ERISA attorney can command more than $300 per hour is because he should not need to spend a lot of time researching" issues such as caselaw on the applicable standard of review. *Id.* at *4. In that case, the plaintiff's counsel sought hourly rates of $425, $375, and $350 respectively. *Id.* Judge Schiltz found that a rate of $350 per hour was appropriate for lead counsel and $320 per hour for the other two attorneys, and applied a forty percent reduction due to the duplicative and excessive time billed, finding that amount to be a "substantial award that is sufficient to account for the complexities"

---

[5] The Court notes that Judge Schiltz also found reason to comment on the poor organization of the record, which made it "much more cumbersome than usual." *Werb. v. Reliastar* at *3.

in that case, based on the time spent on comparably involved cases in the district. *Id.* at *3-4.

The Court finds the reasoning in *Werb* persuasive. While it weighs the fact that the *Werb* opinion was issued over five years ago as a factor in calculating an appropriate hourly fee, it must also consider that Christoff's attorneys have gained five years of experience and are still billing excessive hours for tasks such as researching issues that they should, by now, be all the more expert in litigating. The Court also observes that Christoff's lawyers assigned tasks in the most costly way possible, with the most expensive lead counsel spending a great deal of time drafting pleadings and with attorneys performing administrative and clerical tasks.

Among its quarrels with the requested fee, Unum contends that certain entries in Christoff's time sheets are vague due to the use of block billing, a term for "lumping together of daily time entries consisting of two or more task descriptions." *King v. Turner*, Civ. No. 05-388, 2007 WL 1219308, at *3 (D. Minn. Apr. 24, 2007). Other circuits have warned against the practice of block billing, but the Eighth Circuit has no requirement that attorneys refrain from it use. *Id.* Christoff has indeed used block billing in its request, with entries even occasionally including the unhelpful descriptor of "etc.," but the Court finds that its time sheet entries generally contain enough specific information for the Court to tell what was done and how it contributed to the work on this case. Consequently, the Court does not weigh the factor of vagueness of entries heavily in discounting the lodestar.

The Court finds that an adjustment of the lodestar is appropriate. The affidavit submitted in support of the rates requested is vague and speculative, providing little useful guidance. Because of this, the Court will calculate an appropriate fee based on its knowledge of the rates charged by attorneys and paralegals in this district. For lead attorney Nolan, whose submitted lodestar totals $97,525.00, the Court reduces the hourly rate to $350 per hour and the number of hours by forty percent in light of the duplicative work, unsuccessful and abandoned work, vague entries, and clerical or administrative work performed by an attorney, resulting in an adjusted lodestar of $43,575.00. For Galman, the Court likewise reduces the lodestar for duplicative, unsuccessful, and abandoned work, vague entries, and clerical or administrative tasks from the initially requested $385 per hour to $320 and the number of hours by forty percent, resulting in a lodestar of $53,395.20.[6] As to Tataryn, the Court applies the same reasoning, and reduces the hourly rate to $320 but finds that the amount of time attributed to her work is within reason, resulting in a lodestar amount of $1,088. The total lodestar, therefore, is $98,058.20. The Court finds that this approach sufficiently addresses the *Hensley* factors and no further downward adjustment of fees overall is warranted. Based on the Court's careful review of the record, its familiarity with the work of the attorneys, and its

---

[6] This is the same rate that Judge Schiltz found appropriate five years ago in the *Werb* decision; it remains appropriate, and even generous, when the amount of basic drafting and clerical and administrative work attributed to these attorneys is factored into the equation. *See, e.g., Bowers v. Life Ins. Co. of N. Am.*, Civ. No. 13-891, 2014 WL 4265828, at *4 (D. Minn. Aug. 28, 2014) (finding that a rate of $320 was appropriate for a "senior ERISA litigator" in this area).)

experience and knowledge of the local legal market, this amount reasonably compensates Christoff's attorneys for the result obtained.

**C.     Costs**

Christoff also seeks costs in the amount of $1,448.45 for court fees and transcripts. (Bill of Costs.) These amounts are undisputed, and the Court finds them to be reasonable and supported by the record.

**ORDER**

Based upon the foregoing, and on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff Matthew Christoff's Request for Attorneys' Fees (Doc. No. [117]) is **GRANTED** in part. The Court awards Plaintiff $98,058.20 in attorneys' fees and $1,448.45 in costs.

2. The Court adopts Defendant Unum's uncontested finding that Plaintiff Christoff's unpaid benefits and interest total $636,175.89 and awards Plaintiff damages in that amount, plus the additional amount owed for the period between the date of that total and this Order as calculated in the same manner.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated:  December 10, 2019                         s/Donovan W. Frank
                                                  DONOVAN W. FRANK
                                                  United States District Judge